# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF KENTUCKY

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| **INMET MINING, LLC**[1] | ) | Case No.23-70113-grs |
| | ) | |
| Debtor. | ) | |
| | ) | Honorable Gregory R. Schaaf |

## DEBTOR'S MOTION FOR ENTRY OF AN ORDER AUTHORIZING DEBTOR TO PAY CERTAIN PERMIT RELATED EXPENSES ON BEHALF OF KOPPER GLO MINING, LLC

The above-captioned debtor-in-possession (the "Debtor"), by and through its proposed counsel, STEPTOE AND JOHNSON PLLC, hereby moves this Court (this "Motion") for entry of an order in substantially the form attached hereto as Exhibit A (the "Proposed Order") (a) authorizing, but not directing, the Debtor, in its sole discretion, to pay certain prepetition claims in accordance with the procedures proposed in this Motion, (b) authorizing banks and other financial institutions (the "Banks") to honor and process related checks and transfers, and (c) granting related relief. In support of this Motion, the Debtor states as follows:

---

[1] The Debtor in this Chapter 11 case is INMET Mining, LLC (last four digits of its federal tax identification number is 1693).

1

## JURISDICTION AND VENUE

1. The Court has core jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue for this proceeding and this Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicates for the relief set forth herein are sections 105(a), 363, 503(b)(9), 1107, and 1108 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## BACKGROUND

3. On April 5, 2023 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Kentucky (this "Court") commencing the Chapter 11 Case (the "Chapter 11 Case"). The Debtor continues to manage and operate its business and properties as debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Chapter 11 Case. As of the date hereof, the United States Trustee (the "U.S. Trustee") has not appointed an official committee of unsecured creditors in the Chapter 11 Case.

4. The Debtor's core business is producing and processing metallurgical (or "met") coal and thermal (or "steam") coal for use by utility providers and industrial companies located primarily in the eastern United States. The Debtor has just under 400 employees and has current ongoing coal mining operations in Kentucky. The Virginia operations of the Debtor were recently idled. The Debtor currently operates five mines and produced 945,905 of clean tons of coal in 2022 and is forecasted to produce 1,160,923 tons of clean coal in 2023 through its preparation plants.

5. Additional information regarding the Debtor's businesses, capital structure, and the circumstances leading to the chapter 11 case are contained in the *Declaration of Jeffrey Strobel in Support of the First Day Motions of Debtor-in-Possession* (the "First Day Declaration").

## Liabilities of Kopper Glo Mining, LLC

6. Kopper Glo Mining, LLC ("KGM") holds the following Kentucky Pollutant Discharge Elimination System Permits: KY0111571 (121240); KYGE40422 (109081); and KYGE41091 (159487), in each case issued by the Energy and Environment Cabinet's ("Cabinet") Division of Water ("DOW"). Pursuant to an Agreed Order dated September 13, 2022, KGM agreed to resolve alleged violations of KRS Chapter 224, including by payment of civil penalties in the amount of $105,000.00, in twenty-four monthly payments of $4,375.00 and potential stipulated penalties based on failure to comply with the terms of the Agreed Order ("DOW Claims"). The Agreed Order is still in force and effect.

7. Pursuant to an email dated December 15, 2021, from Hunter Hobson to Duane Holliman, KGM agreed to resolve violations alleged by the Office of Surface Mining Reclamation and Enforcement ("OSMRE") by payment of $1,204,992.09, as follows: $133,880.00 as a good faith down payment and 18 installment payments of $66,944.00, starting on January 31, 2022 and terminating on June 30, 2023 ("OSMRE Claims").

8. KGM currently incurs approximately $26,000.00 per week in costs, fees, and expenses associated with on-going reclamation work at its idle operations in Tennessee performed by Dean Knuckle Enterprises, Inc. ("Knuckle Claims" and together with the DOW Claims and OSMRE Claims, the "Obligations").

9. The Surface Mine Control and Reclamation Act's ("SMCRA") section 510(c) provides that when "any surface coal mining operation owned or controlled by the applicant is in

3

violation of this Act or such other laws referred to in this subsection, the permit shall not be issued . . . ."[2] This provision is commonly referred to as SMCRA's "permit block provision". Under this provision, permit applicants who own or control surface coal mining operation with delinquent civil penalties or fees, certain outstanding unabated violations of SMCRA, and/or unabated violations of certain other laws, are not eligible for new permits (or permit renewals, transfers, etc.).[3]

10. Kentucky's Permit Block provision provides:

> [t]he cabinet shall not issue a permit if any surface coal mining reclamation operation owned or controlled by either the applicant or by any person who owns or controls the applicant is currently in violation of [SMCRA], [federal regulations enacted SMCRA], [Kentucky Revised Statutes Chapter 350 and administrative regulations adopted pursuant thereto], or any other law, rule, or administrative regulation referred to in this subsection.[4]

11. Debtor is owned one hundred percent (100%) by Industrial Minerals Group, LLC ("Industrial Minerals"). KMG is also owned one hundred percent (100%) by Industrial Minerals. Industrial Minerals is owned one hundred percent (100%) by Charles "Hunter" Hobson.

12. The SMCRA and Kentucky Permit Block provision prevent the issuance of certain mining permits to an entity if it or certain related entities have outstanding delinquent penalties or assessments for violations of certain environmental or other laws or regulations. Non-payment of such penalties or assessments could preclude the receipt or renewal of permits required for the

---

[2] 30 U.S.C. § 1260(c).
[3] 30 C.F.R. § 773.12.
[4] 405 Ky. Admin. Regs. 8:010, Section 13(4).

4

Debtor's continued operations and thus could interfere with the Debtor's attempts to maximize the value of its assets for the benefit of its estate.

13. In addition, to the above payments to the above weekly payment of $26,000 to avoid permit violations the Debtor makes a weekly payment of $35,000 to Indemnity National Insurance Company ("INIC") as surety on the bonds for both the Debtors and KGM mining and related permits. Keeping the bonds in place for both the Debtor and KGM is absolutely imperative in order that the Debtor does not become permit blocked.

13. As of the Petition Date, Debtor makes payments to satisfy the Obligations on behalf of KGM in the interest of preserving Debtor's own receipt or renewal of permits.

## RELIEF REQUESTED

14. Pursuant to this Motion, the Debtor seeks entry of an order (i) authorizing the Debtor to pay, in its discretion, the Obligations in the amount of $61,000 on an weekly basis and an aggregate amount as set forth in the budget for the Debtor in Possession lending (the "KGM Claims Limit") and (ii) authorizing all applicable Banks asked to process, honor and pay any and all checks and transfer requests with respect to the Obligations to rely on the representations of Debtor as to which checks are issued or authorized to be paid in accordance with this Motion without any further duty of inquiry and without liability for following the Debtor's instructions.

## BASIS FOR RELIEF

15. The Debtor believes that payment of the Obligations is vital to maximizing the value of the Debtor's estate for the benefit of all parties in interest. Maintaining eligibility to receive or renew permits required for the Debtor's continued operations is essential to maximize the value of the Debtor's estate. Further, payment of the Obligations will enable Debtor to

5

safeguard the confidence and goodwill of governmental authorities issuing permits and monitoring compliance with applicable environmental laws.

16. The Court's general equitable powers are codified in section 105(a) of the Bankruptcy Code and include the ability of this Court to "issue any order, process or judgment that is necessary to carry out the provisions of [the Bankruptcy Code].[5] A bankruptcy court's use of its equitable powers to "authorize the payment of prepetition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept." *In re Ionosphere Clubs. Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y.1989). Under section 105(a) of the Bankruptcy Code, this Court "can permit pre-plan payment of a prepetition obligation when essential to the continued operation of the debtor." *In re NVR L.P.*, 147 B.R. 126, 127 (Bankr. E.D. Va. 1992); see also *In re Just for Feet, Inc.*, 242 B.R. 821, 825 (D. Del. 1999) ("to invoke the necessity of payment doctrine, a debtor must show that payment of the prepetition claims is critical to the debtor's reorganization").

17. Numerous courts have used their equitable powers pursuant to section 105(a) of the Bankruptcy Code under the necessity of payment doctrine to authorize payment of a debtor's prepetition obligations where, as here, such payment is necessary to effectuate the "paramount purpose" of chapter 11 reorganization, which is to prevent the debtor from going into liquidation and to preserve the going concern value of the debtors. *See In re Lehigh Co. & New England Ry. Co.*, 657 F. 2d 570, 581 (3d Cir. 1981) (holding that "if payment of a claim which arose prior to reorganization is essential to the continued operation of the ... [business] during reorganization, payment may be authorized even if it is made out of [the] corpus"); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174,176-77 (Bankr. S.D.N.Y. 1989) (doctrine "recognizes the existence of the judicial power to authorize a debtor in a reorganization case to pay prepetition claims where such payment

---

[5] 11 U.S.C. §105(a).

is essential to the continued operation of the debtor"); *see also In re James A. Phillips, Inc.*, 29 B.R. 391, 394-95 (S.D.N.Y. 1983) (upholding the bankruptcy court's order authorizing the debtor to make postpetition payment of prepetition claims in the ordinary course without notice and a hearing). The "necessity of payment" doctrine "recognizes the existence of the judicial power to authorize a debtor in a reorganization case to pay prepetition claims where such payment is essential to the continued operation of the debtor." *Ionosphere Clubs*, 98 B.R. at 176; *In re Chateaugay Corp.*, 80 B.R. 279 (S.D.N.Y. 1987). This rule is consistent with the paramount goal of chapter 11, i.e., "facilitating the continued operation and rehabilitation of the debtor . . . ." *Ionosphere Clubs*, 98 B.R. at 176.

18.     Under the doctrine of necessity, a bankruptcy court may exercise its equitable power to authorize a debtor to pay the prepetition claims of certain critical vendors. *See In re Columbia Gas Sys. Inc.*, 136 B.R. 930, 939 (Bankr. D. Del. 1992) (recognizing that "[i]f payment of a prepetition claim 'is essential to the continued operation of [the debtor], payment may be authorized"). The Debtor respectfully submits that similar relief is warranted in this chapter 11 case.

19.     In connection with the foregoing, the Debtor respectfully requests that the Court (a) authorize Banks to receive, process, honor, and pay all checks and transfers issued by the Debtor in accordance with this Motion, without regard to whether any checks or transfers were issued before or after the Petition Date; (b) provide that all Banks may rely on the representations of the Debtor with respect to whether any check or transfer issued or made by the Debtor before the Petition Date should be honored pursuant to this Motion (such banks and other financial institutions having no liability to any party for relying on such representations by the Debtor provided for herein); and (c) authorize the Debtor to issue replacement checks or transfers to the

7

extent any checks or transfers that are issued and authorized to be paid in accordance with this Motion are dishonored or rejected by the Banks.

## NOTICE

20. Notice of this Motion has been given to (i) the Office of the United States Trustee for the Eastern District of Kentucky; (ii) the Debtor's 20 largest unsecured creditors on a consolidated basis; (iii) all parties asserting a security interest in the assets of the Debtor to the extent reasonably known to the Debtor; (vi) all parties to equipment leases with the Debtor to the extent reasonably known to the Debtor; (vii) all parties asserting a surety bond interest in the assets of the Debtor to the extent reasonably known to the Debtor, i.e., Commonwealth of Kentucky, Energy and Environment Cabinet, Department of Natural Resources, Commonwealth of Virginia, Virginia Department of Mine Minerals and Energy, Division of Mined Land Reclamation, Energy and Environment Cabinet, Division of Mine Reclamation and Enforcement, Kentucky Utilities, United States of America, Department of the Interior, Bureau of Land Management; (viii) all parties asserting a taxing interest in the assets of the Debtor to the extent reasonably known to the Debtor, i.e. Kentucky Department of Revenue, US Department of Treasury, and US Department of Interior-Office of Surface Mining; (ix) counsel to any party in pending litigation with the Debtor; and (x) those entities specifically affected by a specific motion. Because of the exigencies of the circumstances and the irreparable harm to the Debtor that will ensue if the relief requested herein is not granted, the Debtor submits that no other notice need be given. **Please take notice that the Debtor has filed a Motion for an Expedited Hearing to consider First Day Motions, including the foregoing.**

## **NO PRIOR REQUEST**

21. No prior motion for the relief requested herein has been made to this Court or any other court.

**WHEREFORE**, the Debtor respectfully requests that this Court enter an order (i) authorizing the Debtor to pay the Obligations in an aggregate amount not to exceed $61,000 per week; (ii) authorizing the Banks asked to process, honor and pay any and all checks and transfer requests with respect to Obligations to rely on the representations of Debtor as to which checks are issued or authorized to be paid in accordance with this motion without any further duty of inquiry and without liability for following the Debtor's instructions; and (ix) granting such other and further relief as this Court deems appropriate.

[*Signature page follows*]

Dated: April 7, 2023  /s/Jeffrey K. Phillips
Jeffrey K. Phillips

/s/Nathaniel R. Kissel
Nathaniel R. Kissel
**STEPTOE AND JOHNSON PLLC**
100 W Main Street, Suite 400
Lexington, Kentucky 40507
Tel: (859) 219-8200
Fax: (859) 255-6903
Email:  jeff.phillips@steptoe-johnson.com
nate.kissel@steptoe-johnson.com

-and-

Arthur M. Standish (*pro hac vice* application forthcoming)
Sarah C. Ellis (*pro hac vice* application forthcoming)
**STEPTOE AND JOHNSON PLLC**
707 Virginia Street East, Chase Tower, 17th Floor
Charleston, West Virginia 25301
Tel: (304) 353-8000
Fax: (304) 353-8180
Email:    art.standish@steptoe-johnson.com
sarah.ellis@steptoe-johnson.com


**PROPOSED ATTORNEYS FOR DEBTOR-IN-POSSESSION**