**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF KENTUCKY**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| Inmet Mining, LLC | ) Case No.: 23- 70113 -grs |
| | ) |
| Debtor. | ) Honorable: Gregory R. Schaaf |

**MOTION OF THE DEBTOR FOR INTERIM AND FINAL ORDERS (I)
AUTHORIZING, BUT NOT DIRECTING, THE DEBTOR TO (A) PAY AND HONOR
CERTAIN PREPETITION CLAIMS FOR WAGES, SALARIES, BONUSES AND
OTHER COMPENSATION AND WITHHOLDINGS AND DEDUCTIONS; (B)
CONTINUE EMPLOYEE BENEFIT PROGRAMS IN THE ORDINARY COURSE OF
BUSINESS; AND (C) PAY CERTAIN REIMBURSABLE EXPENSES; (II)
AUTHORIZING, BUT NOT DIRECTING, THE DEBTOR TO MAKE DEDUCTIONS
FROM EMPLOYEE PAYCHECKS; AND (III) AUTHORIZING AND DIRECTING
BANKS AND OTHER FINANCIAL INSTITUTIONS TO RECEIVE, PROCESS,
HONOR AND PAY ALL CHECKS AND ELECTRONIC PAYMENT REQUESTS MADE
BY THE DEBTOR RELATING TO THE FOREGOING**

The above-captioned debtor and debtor in possession (the "**Debtor**"), by and through its

proposed counsel, STEPTOE & JOHNSON, PLLC, hereby move the Court (the "**Motion**") for

entry of interim and final orders (the "**Order**"), in substantially the forms attached hereto as

**Exhibit A** and **Exhibit B**, (I) authorizing, but not directing, the Debtor to (a) pay and honor certain

prepetition claims for wages, salaries, bonuses and other compensation and withholdings and

deductions; (b) continue employee benefit programs in the ordinary course of business; and (c)

pay certain reimbursable expenses; (II) authorizing, but not directing, the Debtor to make

deductions from employee paychecks; and (III) authorizing and directing banks and other financial

institutions to receive, process, honor and pay all checks presented for payment and electronic

payment requests relating to the foregoing. In support, the Debtor respectfully states:

## JURISDICTION AND VENUE

1.      The Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of this proceeding and this Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

2.      The statutory bases for the relief requested herein are sections 105(a), 363(b), 507(a)(3), 507(a)(4) and 507(a)(5) of title 11 of the United States Code (the "**Bankruptcy Code**") and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

## BACKGROUND

3.      The Debtor commenced chapter 11 case under which it are seeking joint administration (the "**Chapter 11 Case**") by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code on April 5, 2023 (the "**Petition Date**"). Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtor is operating its businesses and managing its affairs as a debtor-in-possession. As of the date hereof, no creditors' committee, trustee or examiner has been appointed in the Chapter 11 Case.

4.      The Debtor's core business is producing and processing metallurgical (or "met") coal. The Debtor began operations in 2019. By and/or through these operations, the Debtor supplies mostly High Vol B quality coal to the market.

5.      Additional information regarding the Debtor's business, capital structure, and the circumstances leading to the Chapter 11 Case are contained in the *Declaration of Jeffrey Strobel in Support of First Day Motions of Debtor and Debtor-in-Possession*.

## RELIEF REQUESTED

6.      The Debtor employs approximately 360 employees (the "Employees"), most of whom are based in Kentucky, Virginia, and Tennessee. The Employees include approximately 84

salaried Employees and 275 hourly Employees. The Debtor does not have any agreements with independent contractors who serve in various administrative roles ("**Independent Contractors**").

7.       The Employees performed a variety of critical functions, including overseeing and performing the Debtor's coal mining and processing operations during the prepetition period, which added significant value to the Debtor's estate. The Employees' skills, knowledge and understanding of the Debtor's infrastructure and operations are essential to maintain and maximize the value of the Debtor's assets and business.

8.       To minimize the personal hardship that the Employees will suffer if prepetition employee-related obligations are not paid when due or as expected and to maintain morale of the Employees during the Chapter 11 Case, the Debtor hereby seeks authority, in its discretion, to pay and honor certain prepetition claims for, among other items, wages, salaries, and other compensation, Reimbursable Expenses (as defined herein), federal and state withholding taxes and other amounts withheld (e.g., garnishments, child support, Employees' share of insurance premiums, taxes and 401(k) contributions), Employees' health benefits, insurance benefits, flexible spending and/or health savings accounts, workers' compensation benefits, vacation time, paid leave, jury duty leave, life insurance, short-term disability coverage and other Employee benefits that the Debtor has historically provided in the ordinary course of business (collectively, and as more fully described in this Motion, the "**Employee Wages and Benefits**"), and to pay all fees and costs incident to the foregoing, including amounts to third-party administrators or other administrative service providers. In addition, the Debtor seeks authority to modify, change and discontinue any of the Employee Wages and Benefits, and to implement new Employee Wages and Benefits in the ordinary course of business during the Chapter 11 Case, in its discretion, without the need for further Court approval.

9.      Finally, the Debtor requests that banks and other financial institutions be authorized and directed to receive, process, honor and pay all checks presented for payment and electronic payment requests relating to the foregoing. The Debtor also seeks authority to issue new post-petition checks or fund transfer requests with respect to prepetition obligations that may have been dishonored by the banks in respect of the Employees' prepetition wages, benefits and deductions, if necessary.

## I.    Employee Obligations.

### A.    Unpaid Compensation.

10.      The Debtor's average aggregate monthly compensation for Employees, including wages and salaries, amounts to approximately $3,500,000.00.[1] Generally, the payroll is made by checks made out directly to the Employees or direct deposit to Employees personal bank accounts. The Debtor pays Employees on a weekly basis (the **"Pay Period"**), which runs from Sunday to Saturday, and is paid on the Friday following the end of the Pay Period (the **"Pay Day"**).

11.      As of the Petition Date, some of the Debtor's Employees have not been paid all of their prepetition wages earned in arrears, but only to the extent that said Employee's weekly Pay Day had not yet arrived as of the Petition Date.  All Pre-Petition pay to Employees was made timely prior to filing.  The Debtor-in-Possession Lender (**"DIP Lender"**) has pre-funded certain amounts to the Debtor in order for all Employees to be paid in full on their regular scheduled Pay Day on April 7, 2023.   Additionally, compensation may be due and owing as of the Petition Date because:

(a)      some discrepancies may exist between the amounts paid and amounts Employees or others believe should have been paid,

---

[1]      All figures in this Motion regarding the amounts of Employee Wages and Benefits were current as of April 5, 2023, for all of the Employees. The Debtor will advise this Court and parties in interest of the current amounts of Employee Wages and Benefits for the Employees at the hearing on this Motion.

which, upon resolution, may reveal that additional amounts are
owed to such Employees;

(b)    some checks issued to Employees prior to the Petition Date may
not have been presented for payment or cleared the banking system
and, accordingly, have not been honored as of the Petition Date;

(c)    the Employee's electronic funds transfers or checks may not have
cleared the financial institution; and

12.    As the Debtor's payroll runs at multiple periods, all in arrears, the Debtor believes
that, as of the Petition Date, approximately $702,710.65 in accrued wages, salaries, overtime pay,
and other compensation (excluding reimbursable expenses, vacation pay, severance pay, deferred
compensation and incentive bonus pay) earned prior to the Petition Date and prior to a Pay Day
(the "**Unpaid Compensation**") remains unpaid to Employees.

13.    The amount of Unpaid Compensation represents the amounts accrued but where no
check has been delivered or cleared, or where no other payment has been made. The Debtor
believes that there are no Employees who are owed Unpaid Compensation that exceeds the
$12,850.00 priority cap contained in section 507(a)(4) of the Bankruptcy Code.

14.    The sum of the prepetition Employee Wages and Benefits is relatively minimal in
amount when compared to the size and value of the Debtor's estate. For the reasons discussed
below, the Debtor is requesting authority to pay such Unpaid Compensation claims from the pre-
funded amounts from the DIP Lender.

**B.**    **Remitting and Paying Appropriate Deductions and Withheld Amounts.**

14.    During each applicable pay period, the Debtor routinely deducts certain amounts
from its Employees' paychecks, including, without limitation, (a) garnishments, child support and
similar deductions, (b) other pretax and after-tax deductions payable pursuant to certain of the
Employee benefit plans discussed herein (such as an Employee's share of health care benefits,
insurance premiums, 401(k) contributions, 401(k) loan payments, legally ordered deductions and

other miscellaneous deductions), and (c) deductions for individual insurance programs selected by the Employees such as voluntary life insurance (collectively, the "**Deductions**") and forward those amounts (with the exception of amounts owing on account of self-insured programs) to various third-party recipients. On average, the Deductions equal approximately $281,892.11 in the aggregate for each month.

15.    Further, the Debtor is required by law to withhold amounts related to federal, state and local income taxes, social security, Medicare taxes and other amounts from its Employees' wages for remittance to the proper taxing authority (collectively, the "**Withheld  Amounts**"). The Debtor must then make matching contributions from the Debtor's own funds for social security and Medicare taxes and pay, based on a percentage of gross payroll, additional amounts for state and federal unemployment insurance (the "**Employer Payroll Taxes**," and collectively with the Withheld Amounts, the "**Payroll Taxes**").

17.    On average, the Payroll Taxes equal approximately $826,325.23 in the aggregate for each month, with approximately 50% attributable to Employer Payroll Taxes and approximately 50% attributable to Withheld Amounts. Before the Petition Date, the Debtor withheld amounts from Employees' earnings for the Employee Payroll Taxes, but such funds may not have been forwarded to the appropriate taxing authorities prior to the Petition Date. The Debtor seeks authority, in its discretion, to continue to honor and process the prepetition obligations with respect to the Payroll Taxes on a post-petition basis, in the ordinary course of business, as routinely done prior to the Petition Date**.**

**C.      Honoring Checks for and Payment of Reimbursable Expenses.**

18.    Prior to the Petition Date, and in the ordinary course of business, the Debtor reimbursed Employees for certain reasonable expenses incurred on behalf of the Debtor in the

scope of their employment (the "**Reimbursable Expenses**"). The Reimbursable Expenses are paid by the Debtor on a weekly basis to Employees and include, but are not limited to, expenses for business related meals, parking, lodging, automobile mileage and other business-related expenses incurred by the Employees in the scope of their employment. On average, the Reimbursable Expenses equal approximately $10,000.00 in the aggregate for each month.

20.     Employees use their personal funds to pay for the Reimbursable Expenses and submit expense requests for approval. The Employees used their own funds based on the expectation and belief that they would be reimbursed for these expenses by the Debtor. Upon approval of the expenses, the Debtor reimburse the Employees. The foregoing Reimbursable Expenses were all incurred on the Debtor's behalf, in the scope of the Employees' employment and with the understanding that they would be reimbursed. Only two Employees are issued company paid credit cards (the "**Company Credit Card Program**") for expenditures that include, but are not limited to, expenses for business related meals, parking, lodging, and other business-related expenses incurred by the Employees in the scope of their employment.

21.     Accordingly, to avoid harming Employees who incurred the Reimbursable Expenses or use the Company Credit Card Program, the Debtor requests authority, in its discretion, to (a) continue to honor, in the ordinary course of business, the outstanding checks for Reimbursable Expenses to Employees, (b) continue reimbursing the Reimbursable Expenses in accordance with prepetition practices, (c) modify its prepetition policies relating thereto as it deems appropriate and (d) pay all Reimbursable Expenses or amounts arising from the Company Credit Card Program that (i) accrued prepetition and (ii) accrued post-petition but relate to the prepetition period.

**II.     Employee Benefits.**

22.    The Debtor has established various plans and policies to provide Employees with health benefits, insurance coverage and other important benefits in the ordinary course of business.

### A.    Health Benefits.

23.    The Debtor provides its Employees who qualify under the medical plan policy with medical, dental, and vision insurance. The medical insurance, as well as the vision and dental insurance, is provided by Blue Cross Blue Shield of Tennessee ("**BCBST**").

24.    On a monthly basis, the Debtor, with contributions from Employees, fund the Health Benefits (as defined below). The Debtor's approximate monthly cost for maintaining the Health Benefits is $281,413.99 in the aggregate. The Debtor offers the following health benefit plans:

> **(a)**    **Medical Benefits Plan**. The Debtor provides Employees and Qualified COBRA Beneficiaries (as defined below) with medical and prescription drug benefits through BCBST (the "**Medical Plan**"). The range of options and benefits vary depending upon each individual's status and elections. The Debtor pays BCBST approximately $278,318.74 per month in the aggregate. Coverage is fully paid by the Debtor.

> **(b)**    **Dental and Vison Benefits Plan**. The Debtor provides Employees and Qualified COBRA Beneficiaries (as defined below) with dental and vision benefits through BCBST (the "**Dental and Vision Plan**"). The range of options and benefits vary depending upon each individual's status and elections. The Debtor pays BCBST approximately $3,095.25 per month in the aggregate for the Dental and Vision Plan. Coverage is fully paid by the Debtor.

25.    Together, the Medical Plan, the Dental Plan and the Vision Plan are the "**Health Benefits**."

26.    The Debtor's accrued and outstanding obligations for Health Benefits as of the Petition Date are approximately $281,413.74 in the aggregate, comprised of amounts for the Medical Plan, the Dental Plan, and the Vision Plan.

27.     Under the Consolidated Omnibus Budget Reconciliation Act (see 26 U.S.C. § 4980B), the Debtor offers certain qualified Employees and their families (the "**Qualified COBRA Beneficiaries**") the opportunity for a temporary continuation of Health Benefits (the "**COBRA Coverage**") in certain instances where coverage under the plan would otherwise end. In order to manage the premium collection process and the various regulatory noticing requirements, the Debtor has contracted with BCBST for accounting and administration of the COBRA Coverage claims pursuant to the Health Benefits.[4]

28.     Employees rely on the Debtor to continue to provide the benefits discussed herein. Employees' welfare and reasonable expectations would be significantly harmed if the Debtor were to fail in paying any amounts due. Therefore, by this Motion, the Debtor seeks authority, in its discretion, to (a) continue the Health Benefits, including the COBRA Coverage, for the Employees and/or Qualified COBRA Beneficiaries in the ordinary course of business on a post-petition basis, (b) modify its prepetition policies relating thereto as it deem appropriate, without further approval of this Court, (c) continue making the above-described contributions to such Health Benefits programs, (d) continue to pay fees of third-party administrators as necessary and (e) pay any amounts related thereto, including any premiums and claim amounts that (i) accrued prepetition and (ii) accrued post-petition but relate to the prepetition period.

**B.     Workers' Compensation.**

29.     Pursuant to applicable state laws, the Debtor must maintain workers' compensation liability coverage (the "**Workers' Compensation Programs**") in the ordinary course of business to ensure prompt and efficient payment and/or reimbursement to its Employees for workers' compensation claims.

30.     The Debtor is self-insured with respect to certain workers' compensation coverage and carries policies for the remaining coverage with: Rockwood Casualty Insurance Company. The Debtor pays approximately $9,200,000.00 annually for workers' compensation coverage. Monthly installment payments average to be approximately $766,666.66 per month (the "**Workers' Compensation Premium**"). In addition, and as required by law, the Debtor pays approximately $946,590.00 per quarter to the Kentucky Workers' Compensation Funding Commission, $170,232.00 per quarter to the Virginia Workers' Compensation, and $90.00 per quarter to the Tennessee Workers' Compensation.

30.     Certain benefits under the Workers' Compensation Programs may have been awarded prepetition, but have yet to be fully paid by the Debtor. Certain other claims were filed prepetition, but have yet to be resolved. In order for the claims administration process to operate in an efficient manner and to ensure that the Debtor comply with state law requirements, claim assessment, determination and adjudication must continue. The costs associated with the Workers' Compensation Programs may fluctuate according to the various claims submitted in a given year.

31.     By this Motion, the Debtor seeks authority, in its discretion, to (a) continue to maintain its Workers' Compensation Programs in the ordinary course of business, including payment of third-party administrators' fees, state fund fees and insurance premiums (b) modify its prepetition policies relating thereto as the Debtor deems appropriate, without further approval of this Court, and (c) pay any amounts related thereto that (i) accrued prepetition and (ii) accrued post-petition but relate to the prepetition period.

**C.      Vacation Time, Holiday Pay and Other Pay.**

32.      The Debtor provides vacation time to all Employees ("**Vacation Time**"). Vacation Time for Employees begins accruing on the Employee's first day of employment, and when used, Employees are paid for eight (8) hours at regular rates. Any vacation time not utilized up to 80 hours can be rolled over to a subsequent period.

33.      The Debtor provides Employees eight (8) paid holidays ("**Holiday Pay**") per year. Holiday Pay is equal to eight (8) hours at each Employee's regular rate.

34.      By this Motion, the Debtor seeks authority, in its discretion, to (a) continue to honor the above referenced pay policies in the ordinary course of business, (b) modify its prepetition policies relating thereto as it deem appropriate and (c) honor and pay any obligations related thereto that (i) accrued prepetition and (ii) accrued post-petition but relate to the prepetition period. The Debtor does not seek the authority to pay, nor will the Debtor pay, any lump-sum payments of unused vacation time during the pendency of the chapter 11 case.

**D.      Employee Defined Contribution – 401(k) Savings Plan**

40.      The Debtor, in the ordinary course of business, sponsors a defined contribution 401(k) Plan (the "**401(k) Savings Plan**") for the Employees.  Substantially all of the Debtor's Employees are eligible to participate in the 401(k) Savings Plan. The Debtor sponsors the 401(k) Savings Plan, which permits certain Employees to contribute a percentage of their gross pay to the 401(k) Savings Plan as either a tax-deferred or post-tax contribution (ROTH). The 401(k) Savings Plan provides for automatic pre-tax salary deductions of eligible compensation up to the limits set by the Internal Revenue Code. The approximate aggregate monthly amount withheld from Employees' paychecks pursuant to the 401(k) Savings Plan, inclusive of Employee contributions and loans, is approximately $ 84,478.32.

39.     The Employees' contributions to the 401(k) Savings Plan total approximately $21,119.58 per Pay Period. Currently, the Debtor estimates that there is approximately $33,494.76 of accrued but unpaid prepetition liabilities pertaining to the Employees' contributions to the 401(k) Savings Plan relating to Employee contributions. The Employees' contributions to the 401(k) Plan are not property of the bankruptcy estate but constitute funds held in trust for the benefit of the Employees. Approximately $12,375.18 in matching contributions have been earned by the Employees but not yet submitted by the Debtor. The Debtor incurs a *de minimis* cost each year for other ancillary administrative expenses associated with the 401(k) Savings Plan. On average, this annual cost to the Debtor amounts to approximately $643,509.36. The Debtor requests to continue the 401(k) Savings Plan for participating Employees, at its sole discretion and in the ordinary course of business, and to remit any prepetition amounts withheld thereunder.

### E.     Employee Insurance Benefits.

41.     In addition to the Health Benefits, the Debtor provides its Employees with Basic Life Insurance, Supplemental Life Insurance, Short-Term Disability Benefits and Other Insurance Benefits (each as defined herein, and collectively, the "**Employee Insurance Benefits**").

### (a)     Basic Life and AD&D Insurance.

42.     The Debtor provides basic group term life and AD&D insurance coverage ("**Basic Life Insurance**") to all full-time Employees through MetLife. The Debtor pays 100% of the Basic Life Insurance premiums, with no Employee contribution.

### (b)     Short-Term and Long-Term Disability.

43.     The Debtor provides certain Employees with short-term and long-term disability benefits (the "**Disability Benefits**") through UNUM. Employees are able to select their level of

coverage and care and are eligible for benefits with appropriate documentation from a physician or other health care provider. The Debtor pays 100% of the short-term Disability Benefits in the amount of $31,768 per month.  The Employees pay 100% of their own long-term Disability Benefits.  Currently, there is an unpaid amount for Disability Benefits in the amount of $87,269.98.

(c)    <b>Other Insurance Benefits.</b>

44.    The Debtor provides certain Employees benefits for cancer, critical illness, accident and whole life insurance (the "**Other Insurance Benefits**") through MetLife, each in accordance with the Debtor's benefits policies. The Other Insurance Benefits are paid exclusively by the Employees as voluntary paycheck deductions.

45.    The Debtor believes that approximately $183,757.77 is owing under the Employee Insurance Benefits as of the Petition Date in the aggregate.

46.    By this Motion, the Debtor seeks authority, in its discretion, to (a) continue to provide the Employee Insurance Benefits, including payment of third-party administrators' fees, (b) modify its prepetition policies relating thereto, as it deems appropriate, without approval of this Court, (c) to pay any amounts relating thereto that (i) accrued prepetition and (ii) accrued post-petition but relate to the prepetition period and (d) to remit any prepetition amounts withheld thereunder.

## III. Independent Contractors.

47.    The Debtor does not use Independent Contractors in this capacity therefore the obligations to the Independent Contractors total $0.00 monthly in compensation (the "**Contractor Obligations**").

48.    Therefore, the Debtor does not need to seek authority to make any payments to Independent Contractors.

**IV.    Direction to Banks.**

49.    Finally, the Debtor seeks an Order authorizing and directing all banks to receive, process, honor and pay any checks, direct deposits, and/or wire transfers drawn upon the Debtor's payroll and general disbursement accounts related to Employee Wage and Benefits, whether presented before or after the Petition Date, provided that such funds are on deposit in the applicable amounts to cover such payments.

**BASIS FOR RELIEF**

**A.    Ample Cause Exists for the Court to Authorize the Debtor to Pay Employee Wages and Honor Employee Benefits Programs.**

50.    The Debtor seeks to continue to honor the Employee Wages and Benefits obligations to ensure the continued operation of its business and to maintain morale of its Employees. The Employee Wages and Benefits are the integral part of each of the Employee's total compensation, many of whom would suffer extreme personal hardship and financial difficulty if they are not paid and their benefits not honored. Any indication that the Employees' Wages and Benefits may not be paid, disappear or not be honored would be detrimental to the preservation of the Debtor's estate.

51.    As a result of the commencement of the chapter 11 case, and in the absence of an order of this Court providing otherwise, the Debtor will be prohibited from paying or otherwise satisfying the Employee Wages and Benefits and the checks, wire transfers and direct deposits issued with respect to the same will be dishonored. To maintain morale of the Employees at this crucial time for the Debtor, and minimize the potential personal hardship the Employees would

suffer if the Employee Wages and Benefits were not paid or honored when due, the Debtor seeks

approval to honor, in its sole discretion and in the ordinary course of business, such obligations.

52.    Sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code require that certain claims

for prepetition wages, salaries, commissions, vacation, severance, sick leave and employee

benefit contributions be accorded priority in payment in an amount not to exceed $12,850.00 for

each employee. Furthermore, section 363(b)(1) of the Bankruptcy Code provides: "the trustee,

after notice and a hearing, may use, sell or lease, other than in the ordinary course of business,

property of the estate." 11 U.S.C. § 363(b)(1).

52.    The Debtor believes that none of the Employees are owed amounts that exceed the

$12,850.00 threshold set forth in sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code. As

such, payment of the Employee Wages and Benefits in the ordinary course of business neither

prejudices general unsecured creditors nor materially affect the Debtor's estate since, pursuant

to sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code, these priority claims are already

entitled to full payment and have priority over unsecured claims.

**B.    The Court Should Authorize the Debtor's Financial Institutions to Honor
Checks and Electronic Fund Transfers Relating to Employee Wages and
Benefits.**

53.    The Debtor requests that all applicable banks and other financial institutions be

authorized and directed to receive, process, honor and pay all checks presented for payment, and

to honor all fund transfer requests made by the Debtor related to the Employee Wages and

Benefits policies and programs, whether such checks were presented or fund transfer requests

were submitted prior to or after the Petition Date. The Debtor will work closely with its banks to

ensure that checks other than those for the Employee Wages and Benefits (and those for other

amounts authorized by order of this Court) will not be honored inadvertently. Accordingly,

checks other than those for the Employee Wages and Benefits, the Reimbursable Expenses will not be honored inadvertently. Moreover, the Debtor represents that it has sufficient liquidity to promptly pay all claims arising from the Employee Wages and Benefits policies and programs on an ongoing basis and in the ordinary course of its businesses.

54.    The relief requested in this Motion is absolutely critical and should be authorized pursuant to sections 105(a), 363(b)(1), 507(a)(4) and 507(a)(5) of the Bankruptcy Code and Rules 6003 and 6004 of the Bankruptcy Rules.

## APPLICABLE AUTHORITY

56.    Pursuant to Sections 363(b) and 105(a) of the Bankruptcy Code, the Debtor seeks authority to continue its Employee Wages and Benefits policies and programs on a post-petition basis, and to pay all of its obligations owed thereunder in the ordinary course of business as of the Petition Date, without regard to whether such obligations accrued before or after the Petition Date.

57.    Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). This section allows bankruptcy courts broad authority and discretion to enforce the provision of the Bankruptcy Code either under specific statutory or equitable common law principals, which essentially codifies the bankruptcy courts' inherent equitable powers. *See Management Tech. Corp. v. Pardo*, 56 B.R. 337, 339 (Bankr. D.N.J. 1985) (court's equitable powers derived from section 105). Bankruptcy courts, in turn, frequently apply section 105(a) to authorize relief in chapter 11 cases, similar to that sought herein, where the debtors have a workforce that is important to the preservation of their business. *See In re Eagle-Picher Indus., Inc.*, 124 B.R. 1021, 1023 (Bankr. S.D. Ohio 1991); *In re Chateaugay Corp.*, 80 B.R.

279, 287 (S.D.N.Y. 1987) (affirming a bankruptcy court order authorizing the debtors to pay pre-bankruptcy wages, salaries, employee benefits, reimbursements and workers' compensation claims and premiums); *see also In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002) (reasoning that because debtor-in-possession has fiduciary duties it must meet, it is logical that the bankruptcy court may "authorize satisfaction of the prepetition claim in aid of preservation or enhancement of the estate" under section 105(a)); *In re Gulf Air, Inc.*, 112 B.R. 152, 154 (Bankr. W.D. La. 1989) (authorizing the debtors to pay current employees' pre-bankruptcy wages, salaries, medical benefits and business expense claims); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 177 (Bankr. S.D.N.Y. 1989) (same).

58.    In so holding, courts typically rely on the "necessity of payment" doctrine to authorize payment of prepetition obligations where, as here, such payment is an essential element of the preservation of the debtor-in-possession's potential for rehabilitation.[5] *See In re CoServ, L.L.C.*, 273 B.R. at 497 (reasoning that because the debtor-in-possession has fiduciary duties it must meet, it is logical that the bankruptcy court may "authorize satisfaction of the prepetition claim in aid of preservation or enhancement of the estate" under section 105(a)); *In re NVR L.P.*, 147 B.R. 126, 127 (Bankr. E.D.Va. 1992) ("Under [section 105] the court can permit pre-plan payment of a prepetition obligation when essential to the continued operation of the debtors"); *see also In re Just for Feet, Inc.*, 242 B.R. 821, 824 (D. Del. 1999) (noting that courts have used their equitable power under section 105(a) to authorize the payment of prepetition claims when such payment is deemed critical to the survival of a debtor); *In re Chateaugay Corp.*, 80 B.R. 279, 287 (S.D.N.Y. 1987) (affirming a bankruptcy court order authorizing the debtors to pay pre-bankruptcy wages, salaries, employee benefits and reimbursement, and workers' compensation claims and premiums).

59.     The "doctrine of necessity" is frequently invoked during the initial stages of reorganization cases when preservation of the estate is most critical and often extremely difficult. In *In re Structurlite Plastics Corp.*, 86 B.R. 922 (Bankr. S.D. Ohio 1988), the court embraced "the principal that a bankruptcy court may exercise its equity powers under section 105(a) to authorize payment of prepetition claims where such payment is necessary to 'permit the greatest likelihood of survival of the Debtors... .'" *Id.* at 931 (citing *In re Chateaugay Corp.*, 80 B.R. 279, 287 (S.D.N.Y. 1987)).

60.     This Court's exercise of its authority under the "doctrine of necessity" is appropriate to carry out specific statutory provisions of the Bankruptcy Code, specifically, sections 1107(a), 1108 and 363(b)(1), which authorize a debtor-in-possession to maintain and operate its business and use property of the estate in the ordinary course of business. Further, a debtor-in-possession operating a business under section 1108 of the Bankruptcy Code has a fiduciary duty to protect and preserve the estate, including the going concern value of a business. *See In re CoServ*, L.L.C., 273 B.R. at 497 ("There are occasions when this [fiduciary] duty can only be fulfilled by the preplan satisfaction of a prepetition claim"). This Court's exercise of its authority under section 105(a) of the Bankruptcy Code is also necessary to carry out two central tenets underlying the Bankruptcy Code: (i) to permit the successful rehabilitation of the Debtor, (*NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 527 (1984); and (ii) to preserve going concern value and maximize property available to satisfy all creditors. *Bank of Am. Nat'l Trust & Save. Ass'n. v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 453 (1999).

61.     This Court may also grant the relief requested herein pursuant to section 363 of the Bankruptcy Code, which provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).

In order to do so, "the debtor must articulate some business justification, other than the mere appeasement of major creditors." *In re Ionosphere Clubs, Inc.*, 98 B.R. at 175. Courts routinely authorize debtors to pay certain prepetition claims pursuant to section 363 of the Bankruptcy Code. *See In re Milacron, Inc.*, Case No. 09-111235 (Bankr. S.D. Ohio, March 11, 2009) (Judge Aug); *In re Dana Corp.*, Case No. 06-10354 (BRL) (Bankr. S.D.N.Y. Mar. 3, 2006); *In re Calpine Corp.*, Case No. 05-60200 (BRL) (Bankr. S.D.N.Y. Dec. 21, 2005); *In re Delphi Corp.*, Case No. 05-44481 (RDD) (Bankr. S.D.N.Y. Oct. 13, 2005); *see also In re Enesco Group, Inc.*, Case No. 07-565 (Bankr. N.D. Ill. Jan 12, 2007).

62.     The Debtor's request to pay prepetition amounts related to Employee Wages and Benefits policies and programs easily meets the preceding standards. The failure to grant such relief, even for a brief amount of time, could have a material adverse impact on both the sale efforts of the Debtor and the value of its estate.

63.     The Debtor believes that if it is unable to honor Employee Wages and Benefits for even a short time, morale and loyalty of the Employees will be jeopardized at a time when support of the Employees is most critical. Many of the Debtor's Employees live from paycheck to paycheck and rely exclusively on their full compensation or reimbursement of their expenses in order to continue to pay their daily living expenses. Regardless of the duration of the chapter 11 case, the Employees will be exposed to significant financial hardships if the Debtor is not permitted to pay the unpaid Employee Wages and Benefits in the ordinary course of business.

64.     For example, if the Debtor is not authorized to pay the Employee Wages and Benefits, then many of the Employees may not be reimbursed for, nor have their medical benefits claims paid. In addition, certain Employees may become primarily obligated for the payment of

such claims where health care providers have not been reimbursed, and may face termination of their health services.

65.    The Debtor also believes that the vast majority of the amounts related to Employee Wages and Benefits that it seeks to pay pursuant to this Motion are entitled to priority status under sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code and do not exceed $12,475.00 for any individual Employee. The Debtor is therefore required to pay these claims in full to confirm a plan of reorganization. *See* 11 U.S.C. § 1129(a)(9)(B) (requiring payment of certain allowed priority claims for wages, salaries, and commissions, and certain allowed unsecured claims for contributions to an employee benefit plan).

66.    Granting the relief requested in this Motion will enhance the probability of maximizing the value of the assets of the Debtor's estate and, ultimately, the return of value owed to creditors. This Court may permit payment of prepetition claims where the payment of the prepetition debt creates "the greatest likelihood of... payment of creditors in full or at least proportionately." *See In re Structurlite Plastics Corp.*, 86 B.R. 922, 932 (Bankr. S.D. Ohio 1998) (quoting *In re Chateaugay Corp.*, 80 B.R. 279, 287 (S.D.N.Y. 1987).

67.    For over a century, "[w]age priority has been a feature of the bankruptcy law since 1898." *In re Garden Ridge Corporation*, Case No. 04-10324 (KJC)(Bankr. D. Del. March 2, 2006, 2006 LEXIS 278 (*quoting* 4 COLLIER ON BANKRUPTCY § 507.05[1] (15th Ed. 2005). The purpose of such wage priority is to "alleviate hardship on workers... who may have no other source of income and 'to encourage employees to stand by an employer in financial difficulty." *Id*. This priority extends to certain other "benefits that are considered akin to compensation, such as vacation, severance and sick leave pay." *Id*.

68.    The underlying key to the success of the Debtor lies with the Employees. Without the Employees, the Debtor's ability to maximize the value of its estate will be severely undermined. Employee departures or deterioration in morale at this time will adversely affect the Debtor's businesses and lead to immediate and irreparable harm to the Debtor and its estate. Furthermore, in order to aid in a smooth transition into the post-petition period, the continuation of the Debtor's ordinary course personnel policies, programs and procedures in effect prepetition is crucial.

69.    In addition, the Debtor should be authorized to pay prepetition amounts owed to administrators and other third-parties for, among other things, administering the Debtor's programs and performing services for Employees related to the Employee Wages and Benefits. The failure to pay any such amounts to administrators and other third-parties would most likely disrupt the services the various third-parties provide to the Debtor's Employees. *See In re Cardinal Indus., Inc.*, 164 B.R. 76, 78 (Bankr. S.D. Ohio 1993) ("[U]nder a self-insured plan which is administered by a third party, giving priority solely to the direct contributions from the employer accomplishes only half the desired result. Unless the employees' claims are properly administered, processed and paid, affording priority to the contributions is meaningless."); accord *Allegheny Int'l, Inc. v. Metro Life Ins. Co.*, 145 B.R. 820, 822-23 (W.D. Pa. 1992) (holding that the prepetition claims of a medical benefits plan administrator for fees charged for performing administrative, actuarial and claims services in connection with the medical benefit plans of a debtors were entitled to priority under former section 507(a)(4) of the Bankruptcy Code, and stating "[i]t would be useless to prioritize expenses for contributions to an employee benefit plan and not prioritize the expenses necessary to administer those plans").

70.    The Debtor's request for authorization to continue to honor and remit Deductions, Payroll Taxes and other Withheld Amounts should also be approved. Such amounts principally represent Employee earnings that governments (in the case of taxes), Employees (in the case of voluntarily withheld amounts) and judicial authorities (in the case of involuntarily withheld amounts) have designated for deduction from Employees' paychecks. The failure to pay these benefits could result in hardship to certain Employees as well as administrative problems for the Debtor. Moreover, if the Debtor cannot remit these amounts, the Employees may face legal action due to the Debtor's inability to submit such payments.

71.    Additionally, the failure to remit Payroll Taxes and other Withheld Amounts may subject the Debtor and its directors and officers to federal or state liability. *See DuCharmes & Co. v. Michigan (In re DuCharmes)*, 852 F.2d 194, 195 (6th Cir. 1988) (noting the special liabilities for failure to pay trust fund taxes); *City of Farrell v. Sharon Steel Corp. (In re Sharon Steel Corp.)*, 41 F.3d 92, 94-96 (3rd Cir. 1994) (state law requiring debtors to withhold city income tax from its employees' wages created trust relationship between debtors and city for payment of withheld taxes). Furthermore, because such funds do not constitute property of the Debtor's estate, the funds are not subject to the normal bankruptcy prohibitions against payment. *See Begier v. IRS*, 496 U.S. 53, 67 (1990) (debtors' payment of employee withholding for federal income and FICA taxes not a preferential transfer because withholding held in trust for taxing authority and not a part of debtors' estates); *McCafferty v. McCafferty*, 96 F.3d 192, 196 (6th Cir. 1996) (citing *Begier* with approval and stating that "[s]ection 541(d) [of the Bankruptcy Code] has often been invoked as the basis for excluding from a bankruptcy estate assets held in constructive trust by a Debtors in favor of another"); *City of Farrell v. Sharon Steel Corp.*, 41 F.3d 92, 98-103 (3rd Cir. 1994) (holding that funds withheld from employees' paychecks may

be subject to a trust, and thus are not property of a debtor's estate, even where such funds are commingled with the debtor's other property).

72.     The Debtor therefore requests authority to pay and transmit any and all Deductions, Payroll Taxes, Withheld Amounts and all other such amounts held in trust for the benefit of the Employees to the proper parties and authorities in the ordinary course of business.

73.     The Debtor believes that payment of the amounts requested in this Motion and the continuation of the vast majority of the Employee Wages and Benefits on a post-petition basis is in the best interests of all parties. Maximization of the value of the Debtor's estate is in the best interests of the Debtor, the Debtor's creditors and all parties in interest. Accordingly, the relief sought by this Motion will allow the Debtor to maximize the value of the estate for the benefit of all parties in interest.

74.     Pursuant to Bankruptcy Rule 6003, the Court may authorize payment of a prepetition claim within 20 days after the Petition Date if such relief is necessary to avoid immediate and irreparable harm. As explained above, continuing to honor the Employee Wages and Benefits obligations is essential to maximize the value of the Debtor's assets. Without satisfaction of these obligations, the Debtor believes that the Employees will suffer significant personal hardship. For the foregoing reasons, the Debtor submits that it has satisfied the requirements of Bankruptcy Rule 6003 and accordingly, this Court should grant the relief requested herein.

75.     Furthermore, in order to ensure the continuance of the Debtor's businesses on an uninterrupted basis, the Debtor also seeks a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the stay of the order authorizing the use, sale or lease of property under Bankruptcy Rule 6004(h).

76.     Finally, the Debtor does not to seek to assume any executory contracts or obligations at this time, and therefore, nothing contained in this Motion should be deemed to be an assumption or adoption of any policy, procedure or executory contract that may be described or referenced herein. Nothing in this Motion should be construed as a request for authority to (i) assume any executory contract under section 365(a) of the Bankruptcy Code or (ii) change the classification of any claim or alter the rights of any Employee of other person. Also, the Debtor will retain the discretion to not make the payments contemplated by this Motion for particular Employees, and nothing in this Motion will, in and of itself, constitute a promise or guarantee of any payment to any Employee or confer upon any Employee or other parties an entitlement to administrative priority or other preferences in distribution from the bankruptcy estate.

77.     For the foregoing reasons, the Debtor believes that granting the relief requested herein is appropriate and in the best interests of all parties in interest.

## **RESERVATION OF RIGHTS**

78.     Notwithstanding anything in this Motion or the Order to the contrary, the payment of any claims pursuant to the Order (if entered by the Court) and other honoring of the Employee Wages and Benefit claims shall neither (i) make such obligations administrative expenses of the estates entitled to priority status under sections 503 and 507 of the Bankruptcy Code nor (ii) constitute approval by this Court of any employee plan or program, including the 401(k) Savings Plan, under any section of the Bankruptcy Code, including section 503(c) of the Bankruptcy Code. Also, to the extent the Debtor seeks to assume any employee programs, including the 401(k) Savings Plan, prior to the confirmation of any plan of reorganization, the Debtor will seek such assumption by separate motion.

79.     Nothing contained herein or any actions taken pursuant to such relief is intended or should be construed as an admission of the validity or priority of any claim against the Debtor, a waiver of the Debtor's or any other party in interest's rights to dispute any claim, or an approval or assumption of any agreement, contract, or lease under section 365 of the Bankruptcy Code. Likewise, if this Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity or priority of any claim or a waiver of the Debtor's or any other party in interest's rights to subsequently dispute such claim. The Debtor expressly reserves its rights to contest any invoice or claim with applicable non-bankruptcy law.

## <u>NOTICE</u>

80. Notice of this Motion has been given to (i) the Office of the United States Trustee for the Eastern District of Kentucky; (ii) the Debtor's 20 largest unsecured creditors on a consolidated basis; (iii) all parties asserting a security interest in the assets of the Debtor to the extent reasonably known to the Debtor; (iv) all parties to equipment leases with the Debtor to the extent reasonably known to the Debtor; (v) all parties asserting a surety bond interest in the assets of the Debtor to the extent reasonably known to the Debtor, i.e., Commonwealth of Kentucky, Energy and Environment Cabinet, Department of Natural Resources, Commonwealth of Kentucky, Commonwealth of Virginia, Virginia Department of Mine Minerals and Energy, Division of Mined Land Reclamation, Energy and Environment Cabinet, Division of Mine Reclamation and Enforcement, Kentucky Utilities, United States of America, Department of the Interior, Bureau of Land Management; (vi) all parties asserting a taxing interest in the assets of the Debtor to the extent reasonably known to the Debtor, i.e. Kentucky Department of Revenue, Virginia Department of Taxation, US Department of Treasury, and US Department of Interior-Office of

Surface Mining; (vii) counsel to any party in pending litigation with the Debtor; and (viii) those entities specifically affected by a specific motion. Because of the exigencies of the circumstances and the irreparable harm to the Debtor that will ensue if the relief requested herein is not granted, the Debtor submits that no other notice need be given. **Please take notice that the Debtor has filed a Motion for an Expedited Hearing to consider First Day Motions, including the foregoing.**

## NO PRIOR REQUEST

81.     No prior motion for the relief requested herein has been made to this Court or any other Court.

WHEREFORE, the Debtor respectfully requests that this Court enter an interim, and subsequently final, order, substantially in the form attached hereto as **Exhibit A** and **Exhibit B**, (A) authorizing, but not directing, the Debtor to (1) pay and honor certain prepetition claims for wages, salaries, bonuses, and other compensation and withholdings and deductions; (2) continue employee benefit programs in the ordinary course of business; and (3) pay certain reimbursable expenses and related costs and expenses; (B) authorizing, but not directing, the Debtor to make deductions from employee paychecks; (C) authorizing and directing banks and other financial institutions to receive, process, honor and pay all checks presented for payment and electronic payment requests relating to the foregoing; and (D) granting such other and further relief as the Court deems appropriate.

*[Signature page follows.]*

**TENDERED BY:**


/s/ Jeffrey K. Phillips
Jeffrey K. Phillips
**Steptoe & Johnson PLLC**
100 West Main Street, Suite 400
Lexington, Kentucky 40507
Tel: (859) 219-8210
E-mail: jeff.phillips@steptoe-johnson.com

-and-

Sarah C. Ellis (*pro hac vice* application forthcoming)
Arthur M. Standish (*pro hac vice* application forthcoming)
**Steptoe & Johnson PLLC**
707 Virginia Street East, Suite 1700
Charleston, West Virginia 25301
Tel: (304) 353-8127
Tel: (304) 353-8135
E-mail: sarah.ellis@steptoe-johnson.com
          art.standish@steptoe-johnson.com

**PROPOSED ATTORNEYS FOR**
**DEBTOR AND DEBTOR-IN-POSSESSION**