# EXHIBIT A

## PLAN DEFINITIONS

1.      "*ACIN Release*" means the Mutual Release between the Debtor, on the one hand, and ACIN LLC, Natural Resource Partners, L.P., and their affiliates and subsidiaries, on the other hand, dated July 26, 2023 and effective as of the closing of the Bluegrass Energy Sale. The ACIN Release is filed with the Bankruptcy Court at Docket No. 617-12.

2.      "*Accrued Professional Compensation*" means, at any given moment, all accrued and/or unpaid fees for legal, financial advisory, accounting and other professional services and reimbursement of expenses of such Professionals that are awardable and allowable under sections 328, 330(a) or 331 of the Bankruptcy Code, or otherwise rendered prior to the Effective Date, in connection with (a) applications filed pursuant to sections 330 and 331 of the Bankruptcy Code; (b) motions seeking the enforcement of the provisions of the Plan or Confirmation Order by all Professionals in the Chapter 11 Case that the Bankruptcy Court has not denied by a Final Order, to the extent that any such fees and expenses have not previously been paid regardless of whether a fee application has been filed for any such amount; and (c) applications for allowance of Administrative Claims arising under sections 503(b)(2), 503(b)(3), 503(b)(4) or 503(b)(6) of the Bankruptcy Code.  To the extent the Bankruptcy Court or any higher court denies by a Final Order any amount of a Professional's fees or expenses or any such Professional voluntarily waives or reduces its fees or expenses, then those amounts shall no longer be Accrued Professional Compensation.

3.      "*Administrative Claims*" means Claims for costs and expenses of administration under sections 503(b), 507(b) or 1114(e)(2) of the Bankruptcy Code, including, without limitation, the actual and necessary costs and expenses incurred on and after the Petition Date and before the Effective Date of preserving the Estate and operating the business of the Debtor (such as wages, salaries or commissions for services and payments for goods and other services and leased premises).  Notwithstanding the foregoing, (i) any fees or charges assessed against the Estate of the Debtor under section 1930 of Chapter 123 of title 28 of the United States Code are excluded from the definition of Administrative Claims and shall be paid in accordance with the Plan, and (ii) Accrued Professional Compensation is excluded from the definition of Administrative Claims and shall be paid in accordance with the Plan.

4.      "*Adversary Proceeding*" means the adversary proceeding filed with the Bankruptcy Court styled *INMET Mining, LLC v. Blackjewel Liquidation Trust LLC, et al.* Case No. 23-ap-7002.

5.      "*Alleged Secured Claim*" means any Claim which attempts to assert a security interest in any property of the Debtor's Estate.

6.      "*Allowed*" means, with respect to any Claim or Equity Interest, except as otherwise provided by a Final Order of the Bankruptcy Court:  (a) a Claim or Equity Interest that has been scheduled by the Debtor in its schedules of liabilities that has been Filed by the Claims Objection Bar Date; (b) a Claim or Equity Interest that either is not Disputed or has been allowed by a Final Order; (c) a Claim or Equity Interest that has been reviewed and deemed allowed by the

Responsible Person; (d) a Claim or Equity Interest that is allowed: (i) in any stipulation of amount and nature of Claim executed prior to the entry of the Confirmation Order and approved by the Bankruptcy Court by a Final Order or (ii) in any stipulation with the Debtor or amount and nature of Claim or Equity Interest executed on or after the entry of the Confirmation Order; (e) a Claim or Equity Interest that is deemed allowed pursuant to the terms hereof or Allowed in the Confirmation Order; or (f) a Disputed Claim as to which a Proof of Claim has been timely Filed and as to which no objection has been Filed by the Claims Objection Bar Date.

7.      "*Assets*" means all assets of the Debtor as of the Effective Date, including, but not limited to, all rights for payments or proceeds owed by Coking Coal under the terms of the Coking Coal Sale Order and assigned to the Debtor in the Settlement Order, the Estate Deposit, the Cash Deposit, the proceeds from the sale of the real estate described in the Blackjewel Liquidation Trust/Penn Virginia Order, Cash of the Estate, Causes of Action, Books and Records and Privileges, as well as the Wind-Down Expenses.

8.      "*Ballot*" means the form of ballot, approved by the Disclosure Statement Order, used to record votes in favor of or opposed to the Plan.

9.      "*Bankruptcy Code*" means section 101, et seq. of title 11 of the United States Code, and applicable portions of titles 18 and 28 of the United States Code, as in effect as of the Petition Date.

10.     "*Bankruptcy Court*" means the United States Bankruptcy Court for the Eastern District of Kentucky.

11.     "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure, promulgated under section 2075 of title 23 of the United States Code, the Local Rules of the United States Bankruptcy Court for the Eastern District of Kentucky, and general orders and chambers procedures of the Bankruptcy Court, each as applicable to the Chapter 11 Case and as amended from time to time.

12.     "*Bar Date Order*" means the *Order (I) Setting a Bar Date for Filing Proofs of Claim, (II) Setting a Bar Date for the Filing of Proofs of Claim by Governmental Units, (III) Setting a Bar Date for the Filing of Requests for Allowance of Administrative Claims, including Claims Arising Under Section 503(b) of the Bankruptcy Code, (IV) Setting an Amended Schedules Bar Date, (V) Setting a Rejection Damages Bar Date, (VI) Approving the Form of and Manner of Filing Proofs of Claim, (VII) Approving Notice of the Bar Dates, and (VIII) Granting Related Relief* [Docket No. 395].

13.     "*Blackjewel Liquidation Trust*" means Blackjewel Liquidation Trust, LLC and any of its agents, affiliates or subsidiaries.

14.     "*Blackjewel Liquidation Trust/Penn Virginia Order*" means the order granting the *Joint Motion for Approval of Settlement Amount the Debtor, Blackjewel Liquidating Trust, LLC, and Penn Virginia Operating Co., LLC Pursuant to Bankruptcy Rule 9019* [Docket No. 653].

15.     "*Blackjewel Trust Unsecured Claim*" means the claim held by the Blackjewel Liquidation Trust against the Debtor and which constitutes Class 1-B.

16.      "*Bluegrass Energy*" means Bluegrass Energy LLC n/k/a Bluegrass Natural Resources LLC and any of its agents, affiliates or subsidiaries.

17.      "*Bluegrass Energy Sale Order*" means the *Order (I) Approving the Sale of Certain Assets to Bluegrass Energy LLC Free and Clear of Liens, Claims Encumbrances and Other Interests, (II) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases and (III) Granting Related Relief* [Docket No. 536] entered by the Bankruptcy Court on July 13, 2023, as may be amended by further Bankruptcy Court order.

18.      "*BMMS*" means Black Mountain Marketing and Sales LP and any of its agents, affiliates or subsidiaries.

19.      "*BMMS Release*" means the Assignment and Mutual Release dated July 28, 2023, between the Debtor and BMMS, to which Bluegrass Energy, the Javelin Entities (as defined in the BMMS Release), and the Committee are signatories [Docket No. 617-14].

20.      "*Books and Records*" means all books and records of the Debtor, including, without limitation, all documents and communications of any kind, whether physical or electronic.

21.      "*Business Day*" means any day, other than a Saturday, Sunday or "legal holiday" (as that term is defined in Bankruptcy Rule 9006(a)).

22.      "*Carve-Out*" means the cash set aside under the terms of the Final Financing Order that is not subject to liens or priority Claims and is designated to pay the Professionals Fees and the U.S. Trustee Fees.

23.      "*Cash*" means cash and cash equivalents, including, but not limited to bank deposits, liquid investments, checks and similar items.

24.      "*Cash Consideration*" means the $971,078.25 ($1,000,000 less pro-rated taxes) paid by Bluegrass Energy to the Debtor's Estate as part of the Sale with Bluegrass Energy, which monies were received by the Debtor free and clear of all liens, claims and encumbrances, including, without limitation, any liens, interests and claims of BMMS and/or Javelin (as defined in the Settlement Order), including, without limitation, any superpriority claims or replacement liens under the Final Financing Order.

25.      "*Causes of Action*" means claims, actions, causes of action, choses in action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, remedies, defenses, rights of setoff, recoupment, subrogation, contribution, reimbursement or indemnity, counterclaims and crossclaims against any other Person, based in law and/or equity, whether under the Bankruptcy Code or other applicable law, whether direct, indirect, derivative or otherwise, whether known, suspected or unsuspected and whether asserted or unasserted as of the Effective Date.  For the avoidance of any doubt, "Causes of Action" includes, without limitation all claims arising under or authorized by 11 U.S.C. §§ 509, 510, 542 through 553, including applicable state law claims, or other actions against insiders and/or any other entities under the Bankruptcy Code.  The Schedules set forth a list of transfers of property made by the Debtor before the Petition Date, and the recipients of such transfers should be aware that they may be liable for an avoidance,

preference, recover, fraudulent transfer, etc. as defined under the Bankruptcy Code. However, the mere fact that a party is not listed in the Schedules, the Plan or the Disclosure Statement does not mean that the Debtor does not hold a Cause of Action against that party. The term Causes of Action shall not include those Causes of Action previously sold, released, or waived under the terms of the Sale Orders, Settlement Order, any other order of the Bankruptcy Court, the BMMS Release, the ACIN Release, the Surety Release, and any other releases executed by the Debtor between the Petition Date and the Effective Date.

26. "*Chapter 11 Case*" means the chapter 11 case commenced when the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the Bankruptcy Court on the Petition Date, which is proceeding as case no. 23-70113-grs.

27. "*Claim*" means a "claim," as that term is defined in section 101(5) of the Bankruptcy Code, against the Debtor.

28. "*Claims Objection Bar Date*" means the deadline for objecting to Claims, which shall be the 90th day following the Effective Date; provided, however, that the Debtor or the Responsible Person upon notice and motion may seek extensions of this date from the Bankruptcy Court.

29. "*Class*" means a category of Claims or Equity Interests as set forth herein pursuant to section 1122(a) of the Bankruptcy Code.

30. "*Coking Coal*" means Coking Coal, LLC and any of its agents, affiliates or subsidiaries

31. "*Coking Coal Sale Order*" means the *Order (I) Approving the Sale of Certain Pigeon Creek Assets to Coking Coal, LLC Free and Clear of Liens, Claims, Encumbrances, and Other Interests, (II) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (III) Granting Related Relief* [Docket No. 537] entered by the Bankruptcy Court on July 13, 2023, as may be amended by further Bankruptcy Court order.

32. "*Committee*" means the Official Committee of Unsecured Creditors appointed by the Office of the United States Trustee pursuant to section 1102(a)(1) of the Bankruptcy Code which consists of the following members: (i) Blackjewel Liquidation Trust, LLC, (ii) Penn Virginia Operating Co., LLC, (iii) Philips Global, Inc., (iv) Combs Equipment Group, LLC, and (v) Dinsmore & Shohl LLP. Penn Virginia Operating Co., LLC and Philips Global, Inc. have resigned from the Committee as of the filing of this Plan.

33. "*Confirmation Date*" means the date on which the Confirmation Order is entered by the Bankruptcy Court.

34. "*Confirmation Hearing*" means the hearing before the Bankruptcy Court scheduled for December 5, 2023 at 9:00 a.m. (Prevailing Eastern Time) during which the Debtor and Committee will seek confirmation of the Plan.

35. "*Confirmation Hearing Notice*" means that certain confirmation hearing notice filed with the Bankruptcy Court following entry of the Disclosure Statement Order.

36. "*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

37. "*Creditor*" means a "creditor" as that term is defined in section 101(10) of the Bankruptcy Code.

38. "*CRO Order*" means the *Order Authorizing the Debtor Pursuant to Sections 105(A) and 363(B) to (I) Employ and Retain Dean Dorton Allen Ford, PLLC and (II) Designate Elizabeth Z. Woodward as Chief Restructuring Officer* [Docket No. 651].

39. "*Debtor*" or "*Debtor in Possession*" means INMET Mining, LLC.

40. "*Disbursing Agent*" means the Responsible Person or his designee as more particularly described in Article V.

41. "*Disclosure Statement*" means the Disclosure Statement for the Plan, prepared and distributed in accordance with the Bankruptcy Code, Bankruptcy Rules and any other applicable law, as it is amended, supplemented or modified from time to time.

42. "*Disclosure Statement Order*" means any order of the Bankruptcy Court approving the Disclosure Statement as having adequate information, including any such order that approves the Disclosure Statement on a conditional or non-final basis.

43. "*Disputed*" means, with respect to any Claim or Equity Interest, any Claim or Equity Interest:  (a) listed on the Schedules as unliquidated, disputed or contingent, unless a Proof of Claim in a liquidated amount has been timely filed; (b) as to which the Debtor, the Responsible Person or other party has interposed a timely objection or request for estimation in accordance with this Plan, the Confirmation Order, the Bankruptcy Code and the Bankruptcy Rules; or (c) as otherwise disputed by the Debtor in accordance with applicable law, which objection, request for estimation or dispute has not been withdrawn or determined by a Final Order; provided, however, that for purposes of this Plan, the Responsible Person shall have the power, up to and including the Claims Objection Bar Date, to determine a Claim to be Disputed upon review of the claims register and the Books and Records and may cause the amendment of the Schedules to reflect any such determination.

44. "*Disputed Claims Reserve*" means amounts in a bank account or accounts reserved for Disputed Claims in accordance with the terms of Article VI.B of this Plan.

45. "*Distributions*" means the distributions of Cash to be made in accordance with the Plan.

46. "*Distributable Cash*" means the amount of Cash held by the Liquidating Trust after the payment of Administrative Claims, Priority Tax Claims, Other Priority Claims, and the necessary expenses of the Liquidating Trust so that such remaining Cash is available for Distributions to the holders of Allowed General Unsecured Claims in Class 1-A and Blackjewel Trust Unsecured Claims in Class 1-B on a *pari passu* basis.

47.     "*Effective Date*" means the date that is the Business Day after the entry of the Confirmation Order on which: (a) no stay of the Confirmation Order is in effect; and (b) all relevant conditions in Article VIII of the Plan have been satisfied or waived.

48.     "*Entity*" means an "entity" as that term is defined in section 101(15) of the Bankruptcy Code.

49.     "*Equity Interest*" means any "equity security" as that term is defined in section 101(16) of the Bankruptcy Code in the Debtor that existed immediately prior to the Petition Date.

50.     "*Estate*" means the estate of the Debtor created on the Petition Date by section 541 of the Bankruptcy Code.

51.     "*Estate Deposit*" means the $500,000 escrowed from the Debtor's cash free and clear of Liens and Claims pursuant to the Settlement Order.

52.     "*Exculpated Parties*" means, collectively, the Debtor's Professionals (retained and actively employed as of the confirmation of the Plan – including Dean Dorton Allen Ford, PLLC and Jackson Kelly PLLC), Elizabeth Woodward, the Committee (including each member in their capacity as a member of the Committee), and the Committee's Professionals (Dentons Bingham Greenebaum LLP, Whiteford, Taylor & Preston LLP, and BDO Consulting Group, LLC).

53.     "*File*" or "*Filed*" means, with respect to any motion, pleading or other document, entered on the docket of the Chapter 11 Case.

54.     "*Final Administrative Claims Bar Date*" means the first Business Day that is 30 days after the Effective Date and is the deadline for a holder of an Administrative Claim incurred after the Initial Administrative Claims Bar Date to file a request with the Bankruptcy Court for payment of such Administrative Claim in the manner indicated herein.

55.     "*Final Decree*" means the decree contemplated under Bankruptcy Rule 3022.

56.     "*Final Financing Order*" means the *Final Order (I) Authorizing Senior Secured Priming Superpriority Postpetition Financing, (II) Authorizing Use of Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection, (V) Modifying Automatic Stay and (VI) Granting Related Relief* [Docket No. 535] entered by the Bankruptcy Court on July 13, 2023.

57.     "*Final Order*" means an order or judgment of the Bankruptcy Court that has not been reversed, stayed, modified or amended, and s to which the time to file an appeal, motion for reconsideration or rehearing (excluding the times prescribed by Bankruptcy Rules 9023 and 9024), or request for a stay has expired.

58.     "*General Unsecured Claims*" means Claims against the Debtor that are not Administrative Claims, Priority Tax Claims, Other Priority Claims, Blackjewel Trust Unsecured Claims, Deficiency Claims, or Equity Interests.

59.     "*Governmental Unit*" means a "governmental unit" as that term is defined in section 101(27) of the Bankruptcy Code.

60.     "*Impaired*" means "impaired" within the meaning of sections 1123(a)(4) and 1124 of the Bankruptcy Code, with respect to any Class of Claims or Equity Interests.

61.     "*Initial Administrative Claims Bar Date*" means July 19, 2023, the date established in the Bar Date Order to file Administrative Claims incurred before the Initial Administrative Claims Bar Date, including, but not limited to, section 503(b)(9) Claims.

62.     "*Initial Distribution Date*" means the date that is as soon as practicable after the Administrative Claims Bar Date, when Distributions under this Plan shall commence to holders of Allowed Claims.

63.     "*Interim Financing Orders*" means the *Interim Order (I) Authorizing Senior Secured Priming Superpriority Postpetition Financing, (II) Authorizing Use of Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection, (V) Modifying Automatic Stay, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief* [Docket No. 112] and the *Second Interim Order (I) Authorizing Senior Secured Priming Superpriority Postpetition Financing, (II) Authorizing Use of Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection, (V) Modifying Automatic Stay, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief* [Docket No. 241], as such order has been subsequently amended [Docket Nos. 349, 394, 494].

64.     "*Lien*" means a "lien" as that term is defined in section 101(37) of the Bankruptcy Code, including, without limitation, a deed of trust, mortgage, charge, security interest, pledge, royalty, override, wheelage obligation, or other encumbrance against or interest in property to secure payment or performance of a claim, debt or litigation.

65.     "*Liquidating Trust*" means the liquidating trust created pursuant to the Plan.

66.     "*Liquidating Trust Agreement*" means the liquidating trust agreement entered into pursuant to the terms of the Plan and attached hereto as **Exhibit A**, as amended from time to time.

67.     "*Other Priority Claims*" means Claims accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than Priority Tax Claims.

68.     "*Oversight Committee*" means the committee of three Oversight Committee Members selected or to be by the Committee, which shall oversee the implementation and administration of the Liquidating Trust.

69.     "*Oversight Committee Members*" means, unless otherwise modified prior to the Effective Date the following persons or entities: (i) Blackjewel Liquidation Trust, LLC, (ii) Combs Equipment Group, LLC, and (iii) Dinsmore & Shohl LLP.  After the Effective Date, the Oversight Committee Members may change in accordance with the terms of Liquidating Trust Agreement.

70. "*Person*" means a "person" as that term is defined in section 101(41) of the Bankruptcy Code, including, without limitation, any individual or Entity.

71. "*Petition Date*" means April 5, 2023, the date on which the Debtor commenced the Chapter 11 Case.

72. "*Plan*" means this plan of liquidation under chapter 11 of the Bankruptcy Code, either in its present form or as it may be altered, amended, modified or supplemented from time to time in accordance with the Bankruptcy Code, the Bankruptcy Rules or order of the Bankruptcy Court, as the case may be.

73. "*Plan Objection Deadline*" means the deadline for parties in interest in the Chapter 11 Case to object to the Plan, and which is November 28, 2023 at 11:59 p.m. (Prevailing Eastern Time).

74. "*Plan Supplement*" means the supplement to the Plan containing certain documents and forms of documents specified in the Plan, if any which documents and forms shall be filed prior to the hearing on confirmation of the Plan.

75. "*Priority Tax Claims*" means Claims of Governmental Units accorded priority in right of payment under section 507(a) of the Bankruptcy Code.

76. "*Privileges*" means the right to assert or waive any privilege, including, but not limited to, any attorney-client privilege, or other privilege or immunity attaching to any documents or communications (whether written, electronic or oral), and control over or rights to direct current or former agents, attorneys, advisors and other professionals of the Debtor with respect thereto. Such Privileges shall vest in the Liquidating Trustee on the Effective Date.

77. "*Professional*" means any Person employed in the Chapter 11 Case pursuant to a Final Order in accordance with sections 327, 328 or 1103 of the Bankruptcy Code, and to be compensated for services rendered prior to and including the Effective Date pursuant to sections 327, 328, 329, 330 or 331 of the Bankruptcy Code.

78. "*Proof of Claim*" means a written proof of Claim filed against the Debtor in the Chapter 11 Case.

79. "*Pro Rata*" means, as of any distribution date, with respect to any Allowed Claim in any Class, the proportion that such Allowed Claim bears to the aggregate amount of all Claims, including Disputed Claims, in such Class. Such ratios shall be calculated as if all Claims in the particular Class asserted against the Debtor are Allowed Claims as of the Effective Date, unless specifically provided otherwise in the Plan.

80. "*Purchased Permits*" means the respective permits purchased by Coking Coal and Bluegrass Energy via the Sales and defined as "Permits" in the Permit Transfer Agreement with Coking Coal [Docket No. 657-2] and "Permits" in the Permit Transfer and Operating Agreement with Bluegrass Energy [Docket No. 617-7].

81. "*Record Date*" means the date that is seven days before the Confirmation Hearing.

82.     "*Representatives*" means, with regard to a Person (including the Debtor), any current or former officers, directors, employees, advisors, attorneys, professionals (including Professionals), accountants, investment bankers, financial advisors, consultants, agents and other representatives (including their respective officers, directors, employees, independent contractors, members and professionals).

83.     "*Responsible Person*" means Evan Blum in his capacity as fiduciary responsible for administering the Estate in accordance with the Plan, and any successor.

84.     "*Sales*" means the sales, approved by the Bankruptcy Court pursuant to the Sale Orders, of substantially all of the Debtor's assets.

85.     "*Sale Orders*" means the Blackjewel Liquidation Trust/Penn Virginia Order, the Coking Coal Sale Order and the Bluegrass Energy Sale Order.

86.     "*Schedules*" mean, collectively, the schedules of assets and liabilities, schedules of executory contracts and statements of financial affairs pursuant to section 521 of the Bankruptcy Code Filed by the Debtor on May 5, 2023, and as may be amended or modified from time to time.

87.     "*Settlement Order*" means the *Order Granting Joint Motion for Approval of Settlement Between the Debtor, Committee and Black Mountain Marketing and Sales, LP Pursuant to Bankruptcy Rule 9019*, including the Settlement Term Sheet attached thereto [Docket No. 538].

88.     "*Solicitation Procedures*" means the solicitation procedures set forth in Article XII of the Disclosure Statement.

89.     "*Subsequent Distribution Date*" means any date that a Distribution not made on the Initial Distribution Date is made.

90.     "*Surety Release*" means the means the Mutual Release between the Debtor, on the one hand, and Indemnity National Insurance Company and its affiliates, including Cumberland Surety, Inc., on the other hand, dated July 26, 2023 and effective as of the closing of the Sales. The ACIN Release is filed with the Bankruptcy Court at Docket No. 617-12.

91.     "*U.S. Trustee*" means the United States Trustee appointed under Article 591 of title 28 of the United States Code to serve in Region 8, including the Eastern District of Kentucky.

92.     "*Voting Agent*" means Stretto, Inc.

93.     "*Voting Deadline*" means the deadline of 11:59 p.m. (Prevailing Eastern Time) on November 28, 2023, to vote to accept or reject the Plan.

94.     "*Voting Record Date*" means October 25, 2023, the date on which holders of Claims that are entitled to vote to accept or reject the Plan will be determined.

95.     "*Wind-Down Expense*" means cash transferred into the Liquidating Trust by the Debtor following the Debtor's reservation for, or payment of, all administrative and priority claims incurred prior to the Effective Date.

## **EXHIBIT B**

## INMET MINING, LLC LIQUIDATING TRUST AGREEMENT

This INMET Mining, LLC Liquidating Trust Agreement ("Agreement") is made and entered into this [___] day of [_____], 2023, by and between (i) INMET Mining, LLC (the "Debtor") as debtor in possession in the chapter 11 case under the caption *In re INMET Mining, LLC*, Case No. 23-70113-grs (the "Bankruptcy Case") in the United States Bankruptcy Court for the Eastern District of Kentucky (the "Bankruptcy Court"), (ii) the Official Committee of Unsecured Creditors of INMET Mining, LLC duly appointed in the Bankruptcy Case (the "Committee"), and (iii) Evan Blum, as responsible person (the "Responsible Person") for the benefit of the creditors and as set forth in the *Joint Plan of Liquidation Proposed by INMET Mining, LLC and the Official Committee of Unsecured Creditors under Chapter 11 of the Bankruptcy Code*, as may be amended, modified or supplemented (the "Plan") and confirmed by the Bankruptcy Court by Order (the "Confirmation Order").

### RECITALS:

**WHEREAS,** on April 5, 2023 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") with the Bankruptcy Court, thereby commencing the Bankruptcy Case.

**WHEREAS,** on October 5, 2023 the Debtor and the Committee filed the Plan.

**WHEREAS**, the Bankruptcy Court entered the Confirmation Order on [_____ ___], 2023 and the Plan became effective on [_____ __], 2023 (the "Effective Date").

**WHEREAS**, the Plan contemplates that the Debtor shall, on behalf of the beneficiaries, create a liquidating trust to fulfill and accomplish the provisions of the Plan into which specified assets and liabilities of the Debtor shall be transferred, assigned and conveyed for the benefit of the holders of Allowed Claims, all as more specifically therein set out in the Plan (the "Liquidating Trust"). The Responsible Person is designated in the Plan as the entity which is to serve as the trustee of the Liquidating Trust.

### AGREEMENTS:

**NOW, THEREFORE,** pursuant to the Plan and the Confirmation Order, in consideration of the promises, the mutual agreements of the parties contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and affirmed, it is hereby agreed as follows:

**1. DEFINITIONS.**

***1.1 Terms Defined Above.*** As used in this Agreement, each of the terms "Agreement," "Bankruptcy Case," "Bankruptcy Court," "Committee," "Debtor," "Liquidating Trust," "Plan," "Confirmation Order," and "Responsible Person," shall have the meanings hereinabove set out.

***1.2 Additional Defined Terms***. As used herein, the following terms shall have the meanings set out below, unless the context otherwise requires:

*(a) "Beneficiaries"* shall mean the claimants in the Bankruptcy Case who are, or may in the future be, entitled to receive their Pro Rata share of the proceeds of the Liquidating Trust Assets from the Liquidating Trust pursuant to Article IV of the Plan.

*(b) "Trust Estate"* shall mean all of the property held from time to time by the Responsible Person pursuant to this Agreement, including all assets and all liabilities.

**1.3   Terms Defined in Plan.**   All other terms used but not defined herein shall have the meaning set out in the Plan.

## 2.   AUTHORITY OF AND CERTAIN DIRECTIONS TO RESPONSIBLE PERSON; DECLARATION OF TRUST.

**2.1   Creation of the Liquidating Trust**.   The Debtor hereby creates the Liquidating Trust for the sole purpose of holding and administering the Liquidating Trust Assets in accordance with Treasury Regulation Section 301.7701.4(d) and taking actions as necessary to made distributions to the Beneficiaries.

**2.2   Purpose of the Liquidating Trust**.   This Liquidating Trust is organized for the sole purpose of conserving, managing and liquidating the Trust Estate for the benefit of the Beneficiaries, with no objective to engage in the conduct of a trade or business.   Pursuant to this express purpose, the Responsible Person is hereby authorized and directed to take all reasonable and necessary actions to conserve and protect the Trust Estate, pursue Causes of Action assigned to the Liquidating Trust, and to sell or otherwise dispose of the Trust Estate and to distribute the net proceeds of such disposition as set forth in the Plan.   For the avoidance of doubt, among the Liquidating Trust's purposes is to collect from Coking Coal, LLC both a note and royalties owed to the Trust Estate from the sale of the Debtor's Pigeon Creek Assets.

**2.3   Property of the Liquidating Trust**.   Legal title to the Trust Estate shall be held either in the name of the Liquidating Trust, or in the name of the Responsible Person on behalf of the Liquidating Trust, as the Responsible Person may from time to time determine.   The Responsible Person shall hold such property in trust to be administered and disposed of by it pursuant to the terms of this Agreement for the benefit of the Beneficiaries.

**2.4   Treatment of the Liquidating Trust for Federal Income Tax Purposes: No Successor in Interest**.   The Liquidating Trust is intended to qualify as a liquidating trust pursuant to Treasury Regulation Section 301.7701-4(d) and as a grantor trust pursuant to Treasury Regulation Section 1.671-4(a), with no objective to continue or engage in the conduct of a trade or business. In the event the Liquidating Trust shall fail or cease to qualify as a liquidating trust in accordance with Treasury Regulations Section 301.7701-4(d), the parties to the Agreement intend that the Responsible Person take such action as it shall deem appropriate to have the Liquidating Trust classified as a partnership for federal tax purposes under Treasury Regulations Section 301.7701-3 (but not a publicly traded partnership under Code Section 7704), including, if necessary, creating or converting it into a Delaware limited liability partnership or limited liability company.   For all United States federal income tax purposes, all parties (including, without limitation, the Debtor, the Responsible Person, and the Beneficiaries) shall treat each transfer of the Liquidating Trust Assets to the Liquidating Trust as (1) a transfer by the Debtor of the Liquidating Trust Assets (subject to any obligations

relating to those assets) directly to the beneficiaries in satisfaction of the Beneficiaries' claims against the Debtor, followed by (2) the transfer by such Beneficiaries to the Liquidating Trust of the Liquidating Trust Assets in exchange for such Beneficiaries' interest in the Liquidating Trust Assets. Accordingly, the Liquidating Trust Beneficiaries shall be treated for United States federal income tax purposes as the grantors and owners of their respective share of the Liquidating Trust Assets. The foregoing shall also apply, to the extent permitted by applicable law, for all state, provincial, territorial and local income tax purposes.

   **2.5  *Bonding of the Responsible Person***.  The Responsible Person shall not be obligated to obtain a bond.

   **2.6  *Fiduciary Duties of the Responsible Person***.  Pursuant to the Plan and the Liquidating Trust Agreement, the Responsible Person shall act in a fiduciary capacity on behalf of the interests of the Beneficiaries of the Liquidating Trust, the holders of Class 1-A General Unsecured Claims and the Class 1-B Blackjewel Trust Unsecured Claim, as applicable.

**3.  DELIVERY AND ACCEPTANCE OF TRUST ESTATE.**

   **3.1  *Transfer of the Liquidating Trust Assets***.   On the Effective Date, the Debtor shall transfer all the Assets of the Estate to the Liquidating Trust as provided for in the Plan and in the Confirmation Order.

   **3.2  *Acceptance by Responsible Person***.  The Responsible Person hereby accepts the trust imposed upon it by this Agreement and agrees to observe and perform the obligations subject to the terms and conditions set forth in this Agreement, the Plan, and the Confirmation Order.   In connection with and in furtherance of the purpose of the Liquidating Trust, the Responsible Person hereby accepts the transfer of the Liquidating Trust Assets.

**4.  ADMINISTRATION OF TRUST ESTATE.**

   **4.1  *Payment of Allowed Claims***.  The Responsible Person shall make Distributions of Liquidating Trust Assets in accordance with the Plan.  Other than as set forth herein or in Article III of the Plan, holders of Class 1-A General Unsecured Claims and the Class 1-B Blackjewel Trust Unsecured Claim shall receive a Pro Rata share of each of the Initial Distribution and any Subsequent Distributions made by the Responsible Person from the Liquidating Trust Assets.

   **4.2  *Powers of the Responsible Person***.  Subject to the provisions herein in administering the Liquidating Trust, the Responsible Person shall have the following powers to be exercised in his discretion in the administration of the Liquidating Trust:

      ***(a)***   to review, receive, own, hold and collect the Debtor's obligations as defined under the Plan and to confirm the Debtor's compliance thereof, including, but not limited to, filing post-confirmation quarterly reports, complying with orders of the Bankruptcy Court, etc.;

      ***(b)***   to pursue, litigate, compromise and settle, but without the need for Bankruptcy Court approval, any of the Debtor's retained Causes of Action identified in the Plan;

3

provided, however, that if the amount in controversy exceeds $20,000, the Responsible Person shall consult the Oversight Committee, which will need to approve such compromise or settlement;

     *(c)* to pursue and manage the liquidation of the Liquidating Trust Assets for the benefit of the Beneficiaries, including making Distributions in accordance with the Plan;

     *(d)* to review, and if necessary, objecting to Claims asserted against the Debtor in the Bankruptcy Case and to settle objections with respect to such Claims as defined in Article III of the Plan;

     *(e)* to open bank accounts on behalf of and in the name of the Liquidating Trust;

     *(f)* to pay expenses and obligations of the Liquidating Trust;

     *(g)* to pay all taxes (without objections), to make all tax withholdings and to file tax returns and information as either the Debtor or a grantor trust as the Responsible Person determines pursuant to Treasury Regulation Section 1.671-4(a) in accordance with the Plan and make tax elections by and on behalf of the Liquidating Trust;

     *(h)* to retain or discharge, without the need to seek Bankruptcy Court approval, such legal counsel, public accountants and other professional advisors as the Responsible Person may deem advisable, in his sole discretion, in connection with the administration of the Liquidating Trust or the exercise of his other powers set out herein;

     *(i)* to establish, re-evaluate, adjust and maintain appropriate reserves as required under the Plan or otherwise to pay any liabilities of the Liquidating Trust;

     *(j)* to pay all fees, expenses, debts and liabilities of the Liquidating Trust and to pay all Allowed Claims in the Bankruptcy Case in accordance with the Plan; and

     *(k)* to exercise such other powers and duties as necessary or appropriate in the discretion of the Responsible Person to accomplish the purposes of the Liquidating Trust as set out herein.

     **4.3  *Additional Powers of the Responsible Person***.  Subject to the express limitations contained herein, the Responsible Person shall have, and may exercise with respect to the Trust Estate, or any part thereof, and in the administration and distribution of the Trust Estate, all powers now or hereafter conferred on trustees by Kentucky common and statutory law.  The powers conferred by this Section in no way limit any power conferred on the Responsible Person by any other Section hereof but shall be in addition thereto; provided, always, that the powers conferred by this Section are conferred and may be exercised only and solely within the limitations and for the limited purposes imposed and expressed in Section 2 hereof.

     **4.4  *Payment of Certain Fees and Expenses***.  All costs and expenses and obligations incurred by the Liquidating Trust in administering the liquidation of the Trust Estate and liquidation of all Claims and otherwise carrying out the duties under the Liquidating Trust and the Plan or in any

23045550.v7

manner connected, incidental or related thereto, specifically including the fees of the Responsible Person, and the Liquidating Trust's lawyers and other professionals, is a charge against the Liquidating Trust. Subject to Section 4.6(d), the Responsible Person shall have the duty and sole responsibility for reviewing and approving any expenses and costs. Further:

(a) *Compensation of the Responsible Person.* The Responsible Person shall be paid $750 per hour from the Trust Estate for administration of the Liquidating Trust. The Responsible Person shall not be required to seek Bankruptcy Court approval for his fees and expenses. However, the Responsible Person shall submit his invoices to the Oversight Committee for review. If the Oversight Committee does not object to the Responsible Person's invoice within ten days, the Responsible Person may pay his fees as funds are available in the Trust Estate. If the Oversight Committee does object to the Responsible Person's fees and the parties are unable to resolve any objection, the Responsible Person may not pay his fees until an order resolving the fee dispute is entered by the Bankruptcy Court. After the Effective Date, the payment of the fees and expenses of the Responsible Person shall be made in accordance with the procedures set forth herein and otherwise in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court. Any successor Responsible Person shall receive such reasonable compensation and reimbursement of expenses in the same manner as the initial Responsible Person.

(b) *Expenses of the Responsible Person.* The Trust Estate shall also reimburse the Responsible Person upon request for all reasonable out-of-pocket expenses incurred by him in the performance of his duties hereunder, including, if necessary, relevant filing fees.

(c) *Professionals and Oversight Committee Members.* Any professionals retained or utilized by the Responsible Person (the "Trust Professionals") shall be entitled to reasonable compensation for services rendered and reimbursement of expenses incurred. The Trust Professionals shall transmit all invoices detailing their services and expenses to the Responsible Person and the Oversight Committee. If the Oversight Committee does not object to the Trust Professional's invoice within ten days, the Responsible Person may pay such fees as funds are available in the Trust Estate. If the Oversight Committee does object to the Trust Professional's fees and the parties are unable to resolve any objection, the Responsible Person may not pay such fees until an order resolving the fee dispute is entered by the Bankruptcy Court. After the Effective Date, the payment of the fees and expenses of the Trust Professional shall be made in accordance with the procedures set forth herein and otherwise in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court. The Oversight Committee shall not be entitled to reimbursement of any attorneys' fees or other professional fees from the Liquidating Trust; provided, however, that each Oversight Committee Member shall have the right to be reimbursed by the Liquidating Trust for any actual and reasonable out of pocket expenses incurred in serving on the Oversight Committee upon submitting proof of the incurrence of such expenses to the Responsible Person.

**4.5 Transferee Liabilities**. The Liquidating Trust shall have no liability for, and the Trust Estate shall not be subject to, any claim arising by, through or under the Debtor except as set forth in the Plan or herein. In no event shall the Responsible Person have any personal liability for such claims. If any liability shall be asserted against the Liquidating Trust or the Responsible Person as the transferees of the Trust Estate on account of any claimed liability of, through or under the Debtor, the Responsible Person may use such part of the Trust Estate as may be necessary to contest

any such claimed liability and to pay, compromise, settle or discharge same on terms reasonably satisfactory to the Responsible Person. In no event shall the Responsible Person be required to use his funds or assets for such purposes.

**4.6  Conveyances from Liquidating Trust**. Subject to the express limitations contained herein, in administering the Liquidating Trust, the Responsible Person is authorized and directed to do and perform all such acts and to execute and deliver such deeds, bills of sale, assignments, instruments of conveyance and other documents as he may deem necessary or advisable to carry out the purposes of the Liquidating Trust. All conveyances, assignments and transfers by the Liquidating Trust shall be on a "where-is, as-is" basis and without warranty of title, warranty of merchantability, warranty of fitness for a particular purpose, or any other warranty of any kind, express, implied or statutory.

**4.7  Fiscal Year**. The Liquidating Trust's fiscal year shall end as of December 31 of each year unless the Responsible Person deems it advisable to establish some other date on which the fiscal year of the Liquidating Trust shall end.

**4.8  Reports by Responsible Person**. The Responsible Person shall prepare and file with the Bankruptcy Court, within 45 days after the end of the fiscal year, a report for such year, commencing with the first complete calendar year following the date of this Agreement, showing (i) the amount of payments made on account of Allowed Claims during such calendar year, (ii) the amount of payments from Coking Coal, LLC or any other party received in such calendar year, (iii) any other income received or expense, disbursement or reserve made or established during such calendar year; (iv) a statement of the value of all cash and cash-equivalent assets in the Trust Estate as of the end of such calendar year, and (v) all litigation commenced by the Responsible Person on behalf of the Liquidating Trust. The Responsible Person shall prepare and file any other information regarding the Liquidating Trust that may be requested by the Bankruptcy Court.

**5.  SOURCE OF PAYMENTS**.

**5.1  Payments from Trust Estate**. All payments to be made by the Responsible Person to any Beneficiary shall be made only from the assets, income and proceeds of the Trust Estate and only to the extent that the Responsible Person shall have received sufficient assets, income or proceeds of the Trust Estate to make such payments in accordance with the terms of this Section 5. Each Beneficiary shall look solely to the assets, income and proceeds of the Trust Estate for distribution to such Beneficiary as herein provided. The aggregate amounts required to be distributed to Beneficiaries in accordance with the provisions of the Plan shall be determined by the Responsible Person in his discretion in accordance with the provisions of the Plan and his determination shall be final and conclusive on all persons and, in the absence of gross negligence or willful misconduct on the part of the Responsible Person, shall not require the review of the Bankruptcy Court. In determining the amount of any such distribution, the Responsible Person may rely and shall be fully protected in relying upon the advice and opinion of legal counsel and other professionals of the Responsible Person.

**5.2  Withholding of Taxes and Other Charge**. The Responsible Person may withhold from the amount distributable at any time to any Beneficiary such sum or sums as may be sufficient to pay any tax or taxes or other charge or charges which have been or may be imposed on any Beneficiary

under the income tax laws of the United States or of any state or political subdivision or entity by reason of any distribution provided for herein, whenever such withholding is required by any law, regulation, rule, ruling, directive or other governmental requirement. The Responsible Person, in the exercise of his discretion and judgment, may enter into agreements with taxing or other authorities for the payment of such amounts as may be withheld in accordance with the provisions of this Section 5.2. As a condition to receiving any Distribution, all Beneficiaries are required to provide any information necessary to effect information reporting and the withholding of such taxes on Form W-8 or W-9 ("Tax Information") within 30 days of a request by the Responsible Person and prior to receiving a Distribution. Failure to comply will result in the Beneficiary's Distribution being treated as undeliverable or unclaimed and forfeited. If the requisite forms are not returned by the date of the Final Distribution, the Beneficiary's claim shall be forever barred. The Liquidating Trust shall not be liable for, and the Responsible Person or his disbursing agent shall not be required to make, a Distribution prior to receiving the Tax Information.

**6. OTHER DUTIES OF THE RESPONSIBLE PERSON.**

*6.1 Management of Trust Estate.* With respect to assets of the Trust Estate, from time to time, the Responsible Person shall, and is hereby directed, to take such actions as shall be necessary or advisable to preserve, maintain and protect the Trust Estate for the benefit of the Beneficiaries consistent with the purposes of the Trust.

*6.2 No Implied Duties.* The Responsible Person shall not manage, control, use, sell, dispose, collect or otherwise deal with the Trust Estate or otherwise take any action hereunder, except as expressly provided herein, and no implied duties or obligations shall be read into this Agreement in favor of or against the Responsible Person; provided, however, that this provision shall not limit the powers conferred on trustees by Kentucky common and statutory law, except to the extent any such power may conflict with any of the provisions and purposes of this Agreement.

**7. CONCERNING THE RESPONSIBLE PERSON.**

*7.1 Acceptance by Responsible Person.* The Responsible Person accepts the Liquidating Trust hereby created for the benefit of the Beneficiaries and agrees to perform the same upon the terms and conditions herein set out. Notwithstanding any term or provision hereof to the contrary, the Responsible Person shall have and exercise the rights and powers herein granted and shall be charged with the performance of the duties herein declared on the part of the Responsible Person to be had and exercised or to be performed. The Responsible Person also agrees to receive and disburse all monies actually received by him constituting part of the Trust Estate pursuant to the terms of this Agreement. Neither the Responsible Person nor his agents, servants, attorneys, partners and employees shall be personally liable for any action taken or omitted to be taken by or on behalf of the Responsible Person unless such action or omission constitutes gross negligence or willful misconduct.

*7.2 Discretionary Submission of Questions to the Bankruptcy Court.* The Responsible Person, in his discretion and judgment, may submit to the Bankruptcy Court any question or questions which the Responsible Person may desire to have explicit approval of the Bankruptcy Court for the taking of any specific action proposed to be taken by the Responsible Person with respect to the Trust Estate, or any part thereof, or the administration and distribution of the Trust

Estate.  The Bankruptcy Court shall approve or disapprove any such proposed action after motion and hearing.  Any such proposed action submitted to the Bankruptcy Court for approval will be approved by the Bankruptcy Court if no Beneficiary objects to such motion within the time specified by the applicable Bankruptcy Rule.  If a Beneficiary objects to such action by the Responsible Person, the Bankruptcy Court shall approve or disapprove such action after hearing.  Upon approval of a proposed action by the Bankruptcy Court by Final Order, the Responsible Person shall be authorized to take the proposed action without liability with respect thereto.  If such action is not approved by the Bankruptcy Court, the Responsible Person shall not take such action.  All costs and expenses incurred by the Responsible Person in the exercise of any right, power or authority conferred by this Section shall be costs and expenses of the Trust Estate.

### 7.3  Liability of the Responsible Person.

(a)  *Limitation on Liability*.  No provision of this Agreement shall be construed to impart any liability upon the Responsible Person, the Oversight Committee Members, or any of their, attorneys, accountants, professionals, partners and employees unless he shall be proved that such person's actions or omissions constituted gross negligence or willful misconduct in the exercise of or failure to exercise any right, power or duty vested in the Responsible Person under this Agreement.

(b)  *Reliance on Orders, Statements, Certificates or Opinions*.  In the absence of gross negligence or willful misconduct on the part of the Responsible Person, the Responsible Person may conclusively rely, as to the truth of the statements and correctness of the opinions expressed therein, upon any orders, statements, certificates or opinions furnished to the Responsible Person and conforming to the requirements of this Agreement.

(c)  *Discretion of Responsible Person*.  Within the limitations and restrictions expressed and imposed herein, the Responsible Person may act freely with respect to the exercise of any or all of the rights, powers and authority conferred hereby in all matters concerning the Trust Estate after forming his best judgment based upon the circumstances without the necessity of obtaining the consent or permission or authorization of the Beneficiaries or of the Bankruptcy Court, any other court, official or officer.  The rights, powers and authority conferred on the Responsible Person by this Agreement are conferred in contemplation of such freedom of prudent judgment and action by the Responsible Person, within the limitations and restrictions so expressed and imposed.  Further, neither the Responsible Person nor his agents, servants, partners and attorneys shall be liable for any act or omission in connection with the administration of this Liquidating Trust, or the exercise of any right, power or authority conferred upon him hereunder, unless he shall be proved that such Responsible Person was grossly negligent or acted in a manner which constituted willful misconduct.

(d)  *Delegation of Duties*.  The Responsible Person shall have power over and be solely responsible for the management and administration of the Liquidating Trust.  Notwithstanding the foregoing, the Responsible Person may engage the services of and delegate such of his powers and duties (but not any of his responsibilities), upon such terms and conditions as are satisfactory to the Responsible Person, to such employees, agents, attorneys, accountants, appraisers, consultants and other persons, including, without limitation, where appropriate, any of

8

the Beneficiaries and their respective agents and employees, as he may deem necessary or advisable to carry out the purposes of the Liquidating Trust.

*(e)  Reliance on Professionals*. The Responsible Person may consult with legal counsel and with such public accountants and other professionals as may be retained by the Responsible Person pursuant to the provisions defined herein.  The Responsible Person shall not be liable for any action taken or suffered by him or omitted to be taken by him without gross negligence or willful misconduct in reliance on any opinion or certification of such accountants or in accordance with the advice of such counsel or experts.

*7.4  Reliance on Responsible Person*.  No person dealing with the Responsible Person shall be obligated to see to the application of any monies, securities or other property paid or delivered to it, or to inquire into the expediency or propriety of any transaction or the right, power or authority of the Responsible Person to enter into or consummate the same upon such terms as the Responsible Person may deem advisable.  Persons dealing with the Responsible Person shall look only to the Trust Estate to satisfy any liability incurred by the Responsible Person to such persons and, except as otherwise expressly provided herein, the Responsible Person shall have no personal obligation to satisfy any such liability.

*7.5  Parties Acting on Behalf of the Liquidating Trust*.

*(a)  Indemnification*.  The Liquidating Trust shall indemnify any person who becomes a party, or is threatened to be made a party to any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative by reason of the fact that it, he or she is or was a Responsible Person, an Oversight Committee Member, or professional retained by the Liquidating Trust against expenses (including attorneys' fees), judgments, tax obligations, liabilities or penalties, fines and amounts paid in settlement actually and reasonably incurred by it in connection with such action, suit or proceeding, including appeals thereof, if he acted without gross negligence or willful misconduct, in the exercise and performance of any power or duty of a Responsible Person or professional as the case may be, under this Agreement.  Any indemnification hereunder is limited by the assets of the Liquidating Trust.

*7.6  Resignation and Removal*.

*(a)  Resignation*. The Responsible Person may resign and be discharged from any future obligations hereunder by giving written notice thereof at least 30 days prior to the Oversight Committee and the Bankruptcy Court.  Such resignation shall become effective on the earlier of (i) 30 days after the giving of such notice, or (ii) after appointment of a permanent or interim successor trustee.

*(b)  Removal*.  At any time upon the request of the Oversight Committee through a motion filed in the Bankruptcy Court, the Bankruptcy Court may remove the Responsible Person (including any successor Responsible Person) for cause.  For purposes of this Section 7.6(b), "cause" shall mean: (a) an act of fraud, embezzlement, or theft in connection with the Responsible Person's duties or in the course of his employment in such capacity, (b) the intentional wrongful damage to the Liquidating Trust Assets, (c) the intentional wrongful disclosure of confidential information of the Liquidating Trust resulting in material harm to the Liquidating Trust, or (d) gross

9

negligence by the Responsible Person in connection with the performance of his duties under this Agreement.   Such removed Responsible Person shall be entitled to any compensation and indemnification set forth in this Agreement, unless the Bankruptcy Court orders otherwise.

       *(c)  Appointment of a Successor Responsible Person*. If, at any time, the Responsible Person shall give notice of his intent to resign pursuant to Section 7.6(a) hereof or be removed pursuant to Section 7.6(b) hereof, the Oversight Committee shall appoint a successor Responsible Person to act under this Agreement.

       *(d)  Tax Reports, Winding Up*. Notwithstanding his resignation or removal, the Responsible Person shall be entitled to complete and file any and all tax returns and reports and pay any and all taxes for periods during which the Responsible Person served on behalf of the Trust. The Liquidating Trust shall pay the taxes and the Responsible Person's expenses incurred with respect to the foregoing.

      *7.7  Acceptance of Appointment by Successor Responsible Person*.   Any successor Responsible Person appointed hereunder shall execute an instrument accepting such appointment and shall deliver a counterpart thereof to the Bankruptcy Court.   Thereupon, such successor Responsible Person shall, without any further act, become vested with all the rights, titles, interests, estates, properties, rights, powers, trusts and duties of his predecessor in the Liquidating Trust hereunder with like effect as if originally named herein.

**8. TERM AND TERMINATION OF LIQUIDATION TRUST**.

      *8.1  Term*.  The Liquidating Trust shall continue and remain in effect for a term terminating on the earlier to occur of (a) all of the Liquidation Trust Assets have been distributed pursuant to this Plan and the Liquidation Trust Agreement, (b) the Responsible Person determines, in his sole discretion, that the administration of the Distribution of any remaining Liquidating Trust Assets is not cost-effective, (c) the Responsible Person is unable to make any remaining Distributions due to undeliverability of Distributions, or (d) all Distributions required to be made by the Responsible Person under this Plan and the Liquidating Trust Agreement have been made; provided, however, in no event shall the term of the Liquidating Trust extend beyond six years from the Effective Date unless the Bankruptcy Court, upon motion within the six-month period prior to the sixth anniversary (or within the six-month period prior to the end of an extension period), determines that a fixed period extension is necessary to facilitate or complete the recovery and liquidation of the Liquidating Trust Assets.

      *8.2  Winding Up*.  For the purpose of winding up the affairs of the Liquidating Trust at its termination, the Responsible Person shall continue to act as the Responsible Person until his duties have been fully discharged.  After so doing, the Responsible Person shall have no further duties or obligations hereunder.  Upon motion by the Responsible Person, the Bankruptcy Court, if he determines it appropriate, may enter an order relieving the Responsible Person of any further duties hereunder.

## 9. LIQUIDATING TRUST OVERSIGHT COMMITTEE

**9.1 *Formation of the Liquidating Trust Oversight Committee***.  On the Effective Date, the Oversight Committee shall be formed to oversee the implementation and administration of the Liquidating Trust.  The Oversight Committee shall initially consist of the persons or entities identified as Oversight Committee Members in the Plan.  As applicable, each Oversight Committee Member shall designate a representative to perform its duties hereunder.  Each Oversight Committee Member shall be entitled to one vote on matters that are presented to the Oversight Committee for decisions.

**9.2 *Consultation with the Liquidating Trust Oversight Committee.***  The Responsible Person shall consult with the Oversight Committee from time to time concerning the administration of the Liquidating Trust and the Liquidating Trust Assets, including, but not limited to, the prosecution or settlement of Causes of Action; provided, however, that, the Responsible Person has the sole discretion to make decisions on behalf of the Liquidating Trust and is not bound to follow any recommendations made by the Oversight Committee unless explicitly provided herein or in the Plan.  A majority vote of the Oversight Committee is necessary to authorize action, provided, however, that if there is a tie vote of the members of the Oversight Committee that the Responsible Person may cast the tie-breaking vote.  Post-confirmation, the Responsible Person may enter into an agreement with the Oversight Committee that provides more detailed procedures regarding voting, recusal and other matters regarding the Oversight Committee without approval of the Bankruptcy Court.

**9.3 *Existence of Oversight Committee and Resignation of Members.***  The Oversight Committee shall continue to serve until termination.  The Oversight Committee shall terminate upon the later to occur of (a) the entry of the final decree in the Bankruptcy Case or, (b) dissolution of the Liquidating Trust.  Each Oversight Committee Member may resign at any time, in which event the Liquidating Trustee shall have the option of appointing a successor representative, who shall be an unsecured creditor, or representative of an unsecured creditor of the Debtor.  The provisions of this Agreement shall apply to any such successor and shall survive resignation with respect to any former representative.

## 10. MISCELLANEOUS.

**10.1 *Sales of Trust Estate***.  Any sale or other conveyance of the Trust Estate, or part thereof, by the Responsible Person made pursuant to the terms of this Agreement shall bind the Beneficiaries and shall be effective to transfer or convey all rights, titles and interests of the Responsible Person and the Beneficiaries in and to such Trust Estate or part thereof.

**10.2 *Notices***.  Unless otherwise expressly specified or permitted by the terms hereof, all notices, demands and other communications required or permitted to be given or made under this Agreement shall be in writing and shall be deemed delivered to the parties (a) on the date of personal delivery or transmission by electronic transmission, (b) on the first business day following the date of delivery to a nationally recognized overnight courier service, or (d) or the third business day following the date of deposit in the United States Mail, postage prepaid, by certified mail, in each case, addressed as follows, or to such other address, person or entity as any party may designate by notice to the others in accordance herewith:

11

If to the Responsible Person to:   Evan Blum
               BDO
               90 Woodbridge Center Dr., 4th Floor
               Woodbridge, NJ 07095
               Telephone:  (732) 734-1036
               E-mail:  ebblum@bdo-ba.com

If to the Debtor:       Mary Elisabeth Naumann
               Chacey R. Malhouitre
               JACKSON KELLY PLLC
               100 W. Main Street, Ste. 700
               Lexington, KY 40507
               Telephone: (859) 255-9500
               E-mail: mnaumann@jacksonkelly.com
                  chacey.malhouitre@jacksonkelly.com

If to the Committee:     James R. Irving
               DENTONS BINGHAM GREENEBAUM LLP
               3500 PNC Tower, 101 S. Fifth Street
               Louisville, Kentucky 40202
               Telephone: (502) 587-3606
               E-mail: james.irving@dentons.com

   *10.3  Severability*.  Any provision of this Agreement which is invalid or unenforceable shall be ineffective to the extent of such invalidity or unenforceability without affecting the validity or enforceability of any other provisions hereof.

   *10.4  Counterparts*.  This Agreement may be executed in multiple counterparts, each of which shall constitute an original, but all of which together shall constitute one and the same instrument.  Signatures may be by electronic means as allowed by Kentucky law.

   *10.5  Binding Agreement*.  All covenants and agreements contained herein shall be binding upon, and inure to the benefit of, the Responsible Person and his respective successors and assigns, as well as the Beneficiaries, and their respective successors and assigns.  Any request, notice, direction, consent, waiver or other instrument or action by any Beneficiary shall bind its successors and assigns.

   *10.6  Amendment*.  This Agreement may not be amended except by an instrument executed by the Responsible Person with the approval of the Oversight Committee and the Bankruptcy Court following the Effective Date.

   *10.7  Construction*.  Except where the context otherwise requires, words importing the masculine gender shall include the feminine and the neuter, if appropriate; words importing the singular number shall include the plural number and vice versa; and words importing persons shall include partnerships, associations and corporations.  The words herein, hereof, hereby, hereunder,

23045550.v7

and words of similar import, refer to this instrument as a whole and not to any particular Section or Subsection hereof.

**10.8   *Number and Gender***.   Unless the context otherwise requires, when used in this Agreement, the singular shall include the plural, the plural shall include the singular, and all nouns, pronouns and any variations thereof shall be deemed to refer to the masculine, feminine or neuter, as the identity of the person or persons may require.

**10.9   *Governing Law***.   This Agreement shall be governed by, and shall be construed and enforced in accordance with, the laws of the Commonwealth of Kentucky, without giving effect to any conflict of law rule or principle of such state.

**10.10   *Headings; Section References***.   Section headings or captions contained in this Agreement are inserted only as a matter of convenience and reference and in no way define, limit, extend or describe the scope of this Agreement, or the intent of any provision hereof.  All references herein to Sections shall refer to Sections of this Agreement unless the context clearly otherwise requires.

**10.11  *Preservation of Privileges***.   To the fullest extent permitted by law, the Debtor will be deemed to irrevocably transfer to the Liquidating Trust, as its legal successor, all rights of the Debtor and its bankruptcy estate (including the estate after the Effective Date) to exercise or waive any attorney-client privilege, accountant-client privilege, or other privilege or immunity attaching to any documents or communications (whether written or oral) (collectively, the "Privileges"), and the Debtor and the Liquidating Trust are authorized to take all necessary actions to effectuate the transfer of the Privileges.  All such Privileges also shall vest in the Liquidating Trust, the Responsible Person and the Oversight Committee, to the fullest extent permitted by law.  This transfer is self-executing, provided however, that the Liquidating Trust and the Debtor are authorized and directed to take any and all necessary actions to effectuate the transfer of such Privileges.  After the Effective Date, the Liquidating Trust shall have the exclusive power and authority to waive the Privileges.

**IN WITNESS WHEREOF**, the parties have entered into this Agreement as of the date first written above.

*[Signature page follows]*

13

**INMET MINING, LLC, IN ITS CAPACITY AS DEBTOR**

_____

By: Elizabeth Woodward

Title:  Chief Restructuring Officer

**EVAN BLUM, IN HIS CAPACITY AS RESPONSIBLE PERSON**

_____

By:  Evan Blum

Title:  Responsible Person

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

_____

By: David Beckman

Title: Solely in his capacity as Chair of the Official Committee of Unsecured Creditors