**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF KENTUCKY**
**PIKEVILLE DIVISION**

IN RE

INMET MINING, LLC                                                                    CASE NO. 23-70113

DEBTOR                                                                                     CHAPTER 11

**ORDER**

The Debtor was granted authority to sell substantially all assets in mid-July 2023. [ECF No. 527, 536-37.] Coking Coal, LLC purchased the assets referred to as the "Pigeon Creek Assets" on July 25, 2023. [ECF No. 580.] The assets referred to as the "Kentucky Assets" were sold to Bluegrass Energy, LLC, on July 28, 2023. [*Id.*] Bluegrass Energy is an affiliate of Black Mountain Marketing and Sales LP, the Debtor's pre- and post-petition lender ("BMMS").

The sales were part of a global resolution of the Committee's objections to the Debtor's use of cash collateral and debtor-in-possession financing with BMMS and the Committee's challenges to BMMS's pre-petition claims. [*See* ECF No. 489 at ¶ 11.] The Committee raised objections to the financing and use of cash collateral and vigorously disputed BMMS's involvement based on its multiple roles in the case (*i.e.*, pre- and post-petition lender, decision maker, and credit bidder). [*Id.*] The global resolution between the Debtor, the Committee, and BMMS allowed for entry of a final financing order, confirmation of the sale of the Kentucky Assets, and a smoother path towards confirmation with a meaningful recovery for unsecured creditors. [ECF Nos. 535, 538.]

Consistent with the settlement, the Debtor and the Committee filed their Joint Plan of Liquidation on October 5, 2023. [ECF No. 728.] The United States, on behalf of the Department of the Army, United States Army Corps of Engineers, Department of the Interior,

and Environmental Protection Agency (collectively the "United States") filed an Objection to the Joint Plan. [ECF No. 819.] The Debtor filed a Memorandum in Support, and a confirmation hearing was held on December 5, 2023. [ECF Nos. 823, 834.]

The Debtor and Committee have proposed a liquidating plan that contemplates collection of receivables due from the Coking Coal sale and the pro-rata distribution of available funds to unsecured creditors. The United States Objection is primarily focused on the concern that the Debtor retains potential liability for an alleged pre-petition Clean Water Act violation. The United States contends that the Debtor violated section 404 of the Clean Water Act by placing fill material into a regulated water source. The fills are contained within an area covered by Kentucky SMCRA Permit No. 848-5630, KYDES/NPDES Permit No. KYGE40324, and USACE Permit No. LRN-1997-20610 (collectively, the "Wax Seam Mine").

The Debtor, the Committee, and the United States all contend that any potential liability was assumed by Bluegrass Energy as part of the sale of the Kentucky Assets. The United States has raised three grounds for its objection: (i) the Plan is not feasible because it does not address the Debtor's remediation obligations; (ii) the injunction provisions are overbroad and a disguised discharge that violates 11 U.S.C. § 1141(d); and (iii) the Bankruptcy Court may not relieve the Responsible Person of the obligation to comply with mining and environmental laws, including the Clean Water Act. [ECF No. 819.]

The Debtor and Committee filed a proposed order overruling the Objection that indicates (ii) and (iii) are resolved by language in the Confirmation Order and the only outstanding issue is feasibility of the Plan. [ECF No. 855 at ¶¶ D-F.] It is assumed that statement is correct, but the comments at the December 5 confirmation hearing and the record do not make that clear.

Therefore, a brief explanation of the reasons these objections are addressed or overruled is provided.

I.     **Exculpation and Injunction.**

The exculpation provision only addresses actions of the specified bankruptcy case professionals after the petition date and is not an issue. [ECF No. 728 at § IX.B.] The injunction does not preclude action against third parties and is narrowly tailored to avoid efforts to circumvent the claims resolution process. [*Id*. at § IX.D.] Further, the Office of the United States Trustee expressed no concern for the provisions at the confirmation hearing, subject to agreed changes in the confirmation order. The injunction is also consistent with similar provisions in recent cases this district. *See, e.g., In re Americore Holdings, LLC*, Case No. 19-61608, ECF No. 2180 (October 2, 2023); *In re Cambrian Holding Company, Inc.*, Case No. 19-51200, ECF No. 1542 (February 16, 2023).

The United States' objections to inclusion of the exculpation and injunction terms in the proposed Plan are addressed in the confirmation order or overruled.

II.    **Imposition of Liability to the Responsible Person.**

A.     Transfer of Permits to Liquidating Trust.

The United States expressed dissatisfaction with a provision that recognizes the mining permits remain in the Debtor's name until they are formally transferred. A time lag, sometimes significant, is a fact of life for coal transactions that is well-known to this Court. It takes a minimum of approximately 90 days to comply with federal and state laws dealing with the assignment and assumption of a permit. The purchaser is not allowed to have prior uncured permit violations and specific notices are required before the permitting body will recognize the

new permittee. Until then, the purchaser uses the permitted property pursuant to a permit operating agreement.

It is not necessary or realistic to expect transfer of the permits to the Liquidating Trust. The Responsible Person would need to take the same steps to transfer permits to the Trust and it would likely interfere with, and slow down, transfer to the purchasers.

B.      Limitation on Personal Liability of the Responsible Person.

The United States also objects to limiting the personal liability of the Responsible Person to gross negligence and willful misconduct. This is another common provision in liquidating plans for coal companies. *See, e.g., In re Americore Holdings, LLC*, Case No. 19-61608, ECF No. 2180 at § V.L; *In re Cambrian Holding Company, Inc.*, Case No. 19-51200, ECF No. 1542 at § 5.10. The only role of the Responsible Person related to the mining permits is to facilitate the transfer process. No party would accept the role if it had to accept all liabilities related to past violations of environmental laws and permits. The Debtor has adequately addressed this concern by prohibiting the ability of the Liquidating Trust to conduct mining operations. [*See* ECF No. 728-1 at §§ 2.2, 4.2.] The Confirmation Order specifically imposes liability for mining and environmental laws if the Responsible Person conducts coal operations.

The proposed Plan and Confirmation Order do not preclude the United States from enforcing environmental laws, including the Clean Water Act. The United States objections on these issues are addressed in the confirmation order or overruled.

**III.    Feasibility.**

A plan is not confirmable if there is an unreasonable risk the debtor will subsequently fail. 11 U.S.C. § 1129(a)(11). The proposed Plan in this case already contemplates liquidation of all funds and does not preclude payment to any allowed claims. This is sufficient to address

subsection (a)(11).  *See, e.g., In Re Farwest Pump Company*, 621 B.R. 871, 894-95 (Bankr. D. Ariz. 2019) (the relatively low threshold of proof to satisfy § 1129(a)(11) is easily met where a plan calls for liquidation).

The United States' primary concern is the assessment of blame and responsibility for an existing, alleged violation.  [ECF No. 834.]  Counsel for the United States indicated the concern exists because Bluegrass Energy has not explicitly accepted its assumption of liability if the alleged violation is ultimately proven.  [*Id.*]  Responsibility is not an issue before the Court, but is considered to determine if the proposed Plan should address the issue.

Counsel for the United States suggested three possible options to address the Objection in the Plan:

1. A reserve to cover restoration and mitigation obligations until a determination the purchaser has assumed liability (with a cost range of $1.5-2.9 million).

2. Confirmation by the purchaser on the record that it assumed this alleged violation subject to non-bankruptcy related defenses; or

3. Additional briefing to address whether the purchaser assumed the alleged violation.

The purchaser did not appear at the hearing, so option #2 did not occur.  A reserve or additional briefing, options #1 and #3, are not required because the record is sufficient to resolve the dispute for purposes of overruling the Objection without the need for amendments to the proposed Plan or additional findings or conclusions in the confirmation order.

The alleged violation occurred during the Debtor's pre-petition mining operations at the Wax Seam Mine.  The record supports the Debtor's and the Committee's claims, and the Court's understanding, that any liability for the alleged violation was assumed by Bluegrass Energy.

The Asset Purchase Agreement identifies the unexpired Wax Seam Mine permits as acquired assets [ECF No. 617-1 at § 2.1(g), Sch. 2.1(g)] and the alleged violation was identified

5

as the only Environmental Claim[1] [*Id*. at § 5.5(c); *see also* Schs. 5.5(c), 5.8, 5.9(c), 5.9(d) (each reemphasizing the existence of the liability by reference to Sch. 5.5(c))].

The definition of a "Liability" in Article 1 of the Asset Purchase Agreement is extremely broad and is easily read to include the described Environmental Claim. [*Id*. at 11.] The purchase price included the Assumed Liabilities in Section 2.3 of the Asset Purchase Agreement. The Assumed Liabilities are also broad, and include the following:

> (c) Liabilities arising out of or relating to the ownership or operation of the Business or Acquired Assets on or after the Closing Date;
> …
> (f) all Liabilities of the Seller with respect to the Transferred Permits or otherwise arising out of or relating to the Transferred Permits, including, but not limited to: (i) all Liabilities for Reclamation; (ii) compliance with performance obligations or standards under the Transferred Permits and associated Legal Requirements; and (iii) obligations to replace bonds or other financial assurance instruments associated with the Transferred Permits, excluding, in each of the preceding cases (i)-(iii), any Excluded Pre-Petition Date Fines;
> (g) all Liabilities to the extent arising out of or relating to compliance with Environmental, Health and Safety Laws, Mining Law,[2] MSHA, OSHA and any mine operating or safety compliance matters arising out of actions taken or facts or circumstances existing following the Closing Date related to the Acquired Assets, but excluding any Excluded Pre-Petition Date Fines;

---

[1] The Asset Purchase Agreement defines an "Environmental Claim" as

> any written notice of violation, action, claim, Encumbrance, demand, abatement or other Order or directive (conditional or otherwise) by any Governmental Authority or any other Person (including, without limitation, any customer, employee or former employee of any contractor or subcontractor of the Seller or the Business) for personal injury (including, without limitation, sickness, disease or death), property damage, damage to the environment (including, without limitation, natural resources), nuisance, pollution, contamination, trespass or other adverse effects on the environment, or for fines, penalties or restrictions resulting from or based upon (i) the Release or threatened Release of or exposure to, any Hazardous Substance, (ii) the manufacture, distribution, use, transport, treatment, storage, disposal, Release or threatened Release, or exposure to Hazardous Substances, (iii) the violation, or alleged violation, of any Environmental, Health and Safety Law or Environmental Permit or (iv) any contractual obligation to any other Person for or in connection with Releases of Hazardous Substances or violations of any Environmental, Health and Safety Law or Environmental Permit.

[ECF No. 617-1 at § 1.1.]

[2] "Mining Law" is defined as all Legal Requirements relating to the exploration, extraction, processing, storage and transportation of coal and non-coal minerals and to the Reclamation of lands used for such activities (collectively referred to as "Mining"), including (i) SMRCA and (ii) MSHA. [ECF No. 617-1 at § 1.1.]

6

> (h) regulatory violations and obligations on or in relation to the Transferred Permits other than Excluded Pre-Petition Date Fines; …

[*Id*. at § 2.3.]

The Excluded Liabilities in Section 2.4 are specific and only exclude those Environmental or other Actions and Proceedings that are not Assumed Liabilities; *i.e.*, those that would not fall under the provisions set out in the preceding paragraph. [*Id*. at § 2.4(b).]

The comments at the sale hearing on July 12, 2023, further confirm the parties understanding that all permits and mitigation obligations transferred to Bluegrass Energy. For example, the Debtor's counsel told the Court and interested parties the following:

> As Your Honor knows, this is very important in a coal case because coal properties are burdened with liabilities from permits and with respect to reclamation, and we have ensured that there are no permits left behind and that all of those obligations and liabilities are assumed and taken on.

[ECF No. 541 at p. 34.] The Committee counsel provided a similar confirmation:

> A significant achievement in the settlement is there are no permits that will be left behind in this bankruptcy case. The settlement ensures that BMMS will assume all permit liability and take all permits that are not otherwise taken by Coking Coal in its asset purchase agreement. This relieves the bankruptcy estate of potential massive liabilities, including reclamation claims, and it has the additional benefit of removing such claims from any potential distribution waterfall.

[*Id.* at p. 40.] And counsel for BMMS and Bluegrass Energy reiterated these statements:

> Every permit is moving, the obligations under the permits are moving, the obligations of the estate to its administrative creditors, all moving. They're all being assumed by the buyer, Black Mountain Marketing and Sales, or its designee, it's going to be known as Bluegrass Energy.

[*Id.* at pp. 77-78.]

The closing documents likewise confirm the purchaser's obligations, including those affecting the underlying property subject to the assumed and assigned permits. The Permit Transfer Agreement attached to the Asset Purchase Agreement provides that Bluegrass Energy is

7

responsible for all reclamation and remedial measures required for the property covered by the permits, and gives the Debtor, and its successors and assigns, indemnification rights. [ECF No. 617-7 at ¶¶ 8, 10.] The Sale Order also emphasizes the continued application of obligations related to mining and environmental laws:

> Nothing in this Order or the Stalking Horse Agreement releases, discharges, nullifies, precludes, or enjoins the enforcement of any environmental liability to a Governmental Unit or any police or regulatory liability (including but not limited to reclamation and mitigation and any associated long term protection requirements) to a Governmental Unit that any entity would be subject to as the owner or operator of the Purchased Assets after the Closing.

[ECF No. 617 at ¶ 12.]

This review indicates the Debtor, the Committee, and the United States all have strong support for their belief that Bluegrass Energy assumed liability for the alleged violation, if proven and assessed. *See Nat. Res. & Envtl. Prot. Cabinet v. Whitley Dev. Corp.*, 940 S.W.2d 904, 907-08 (Ky. Ct. App. 1997) ("… it would be totally absurd to conclude that, once the five-year permit period expired, the obligation to reclaim the permit site simultaneously expired ..."). In hindsight, the United States would have preferred a more direct statement regarding this liability. But the time for an objection to the sale and related orders and agreements is past. The United States must live with the strong indication that Bluegrass Energy assumed any liability related to the alleged violation. It is not reasonable for the United States to use a plan objection to force the Court, the Debtor, and the Committee to take on the time and expense to fully confirm responsibility related to the sale, particularly as the issue is not even based on a direct denial of liability by Bluegrass Energy.

**IV.     Conclusion.**

The United States Objection does not support denial or an amendment to the proposed plan of liquidation. Therefore, it is ORDERED that the United States Objection [ECF No. 819] is OVERRULED.

9

___

**The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.**



**Signed By:**
*Gregory R. Schaaf*
**Bankruptcy Judge**
**Dated: Wednesday, December 13, 2023**
**(grs)**